490 S.E.2d 657

**Stella R. KRONJAEGER, Individually and as Executrix of the Estate of Frank Nelson Kronjaeger, Plaintiff Below, Appellant,**

v.

**The BUCKEYE UNION INSURANCE COMPANY, a Corporation, and McDonough Caperton Insurance Group, Inc., a West Virginia Corporation, Defendants Below, Appellees.**

No. 23829.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided July 11, 1997.

---

3. *See Jonathan G.* and *Diva* for further reasoning of this conclusion.

John Preston Bailey, Cheryl Dean Riley, Bailey, Riley, Buch & Harman, L.C., Wheeling, for Appellant.

Stephen J. Dalesio, Gaca, Matis & Baum, Pittsburgh, PA, for Appellees.

DAVIS, Justice:

The plaintiff below and appellant herein, Stella R. Kronjaeger, appeals the entry of summary judgment by the Circuit Court of Ohio County in favor of the defendants below and appellees herein, The Buckeye Union Insurance Company and McDonough Caperton Insurance Group, Inc. On appeal to this Court, Mrs. Kronjaeger, individually in her own right and as executrix of the estate of her deceased husband, Frank Nelson Kronjaeger, asserts that the circuit court erred by: (1) dismissing her claims to underinsured motorist benefits based upon a "consent-to-settle clause"; (2) failing to consider prejudice to the defendant underinsured motorist insurance carriers in upholding the "consent-to-settle clause"; and (3) declining to find that the defendant underinsured motorist insurance carriers had a duty to (a) notify the Kronjaegers that they had underinsured motorist coverage and (b) advise the Kronjaegers that they were required to obtain the carriers' consent to settle before they could enter a settlement with the other driver and/or his liability insurance carrier. Upon a review of the record and a consideration of the parties' arguments, and for the reasons stated below, we affirm in part, and reverse

in part, the decision of the Circuit Court of Ohio County and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying this appeal generally are not in dispute. On March 3, 1984, Stella R. Kronjaeger and her husband, Frank Nelson Kronjaeger, were involved in an automobile accident with another motor vehicle in Washington County, Pennsylvania. From the record it appears that the collision occurred when the driver of the other vehicle failed to stop at a stop sign and that the Kronjaegers were not at fault. As a result of the accident, Mrs. Kronjaeger sustained various bodily injuries. Mr. Kronjaeger suffered severe brain injuries, which rendered him mentally incapacitated and required nursing care twenty-four hours per day until his death on September 1, 1992.[1]

At the time of the collision, the Kronjaegers were covered by a policy of automobile insurance they had originally purchased from The Buckeye Union Insurance Company [hereinafter Buckeye] and had renewed through July 22, 1984. The Kronjaegers' policy limits included $500,000 liability per accident; $5,000 medical payments per person; $50,000 uninsured motorist coverage per accident; and $50,000 underinsured motorist coverage per accident. The record indicates that the driver of the other automobile carried a policy of automobile insurance with Allstate Insurance Company [hereinafter Allstate] containing liability limits of $50,000 per accident.

Within twenty-four hours of the accident, Mrs. Kronjaeger contacted Buckeye. Shortly thereafter, a Buckeye claims adjuster processed the Kronjaegers' claim for medical benefits pursuant to Pennsylvania law since the accident had occurred in Pennsylvania. As a result of the application of Pennsylvania law, the Kronjaegers were entitled to reimbursement for all medical expenses, with no limits on the amount of such reimbursement.[2] By contrast, had their claim been adjusted under West Virginia law, the Kronjaegers' medical benefits would have been confined to their policy limit of $5,000 per person. The record suggests that, from the time of the accident until Mr. Kronjaeger's death eight-and-one-half years later, Buckeye paid approximately $1,000,000 in benefits as reimbursement for the Kronjaegers' medical expenses.

At some point following the collision, Mrs. Kronjaeger retained counsel in both Pennsylvania and West Virginia. Because of Mr. Kronjaeger's incapacity, Mrs. Kronjaeger was appointed as his Committee by order dated October 5, 1984. As her husband's Committee, Mrs. Kronjaeger settled, on her husband's behalf, with the other driver and the other driver's liability carrier, Allstate, for the full policy limits of $50,000 on May 1, 1985.[3] She subsequently sought restitution

---

1. The parties suggest that Mr. Kronjaeger died both as a result of the injuries he sustained in the 1984 automobile accident and as a result of other, unrelated causes.

2. At the time of the underlying accident, the Pennsylvania No-fault Motor Vehicle Insurance Act classified reimbursement of medical expenses as an "allowable expense" with no appreciable limit thereon. *See* Pennsylvania No-fault Motor Vehicle Insurance Act, Act No. 176, 1974 Laws of Pennsylvania 489, §§ 103, 202(a), 207. In 1984, these provisions were repealed. *See* Act of Feb. 12, 1984, Act No. 11, 1984 Laws of Pennsylvania 26, § 8(a).

3. The release provides, in pertinent part:

 This Indenture Witnesseth that, in consideration of the sum of Fifty Thousand dollars ... receipt whereof is hereby acknowledged, for myself and for my heirs, personal representatives and assigns, I do hereby release and forever discharge Edward Nixon and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, ... loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about the 3[sic] day of March 1984, at or near Washington, Pa.

 . . . .

 I hereby agree that, as a further consideration and inducement for this compromise settlement, this settlement shall apply to all unknown and unanticipated injuries and dam-

for her own personal injuries by filing a civil action, against the other driver, in the Court of Common Pleas of Washington County, Pennsylvania. This action was thereafter settled for $7,500.

Despite having retained counsel nearly continuously from the time of the accident until the present, it appears that Mrs. Kronjaeger did not submit a claim to Buckeye for underinsured motorist benefits until November 17, 1992. Buckeye denied this claim citing, among other reasons, the fact that Buckeye had neither waived its right of subrogation against the other driver nor consented to the Kronjaegers' settlement with Allstate.[4] As a result of Buckeye's denial of coverage, Mrs. Kronjaeger filed a civil action in the Circuit Court of Ohio County, West Virginia, on October 29, 1993, seeking underinsured motorist benefits from Buckeye.[5] In addition to seeking the $50,000 policy limits of underinsured motorist benefits, Mrs. Kronjaeger's complaint also requested Buckeye to pay further insurance benefits, characterized as additional underinsurance benefits, in an amount equal to the $500,000 policy limits for liability coverage as allegedly permitted by our prior decision in *Bias v. Nationwide Mutual Insurance Company*, 179 W.Va. 125, 365 S.E.2d 789 (1987).[6] Buckeye and McDonough Caperton filed answers de-

nying Mrs. Kronjaeger's entitlement to underinsured motorist benefits.

Following preliminary discovery, Buckeye and McDonough Caperton filed a joint motion for summary judgment on March 14, 1996, again citing the Kronjaegers' failure to obtain either a waiver of the defendants' right to subrogation or their consent to the settlement with Allstate. By "Memorandum Opinion and Order" entered June 4, 1996, the circuit court granted the defendants' motion for summary judgment. In evaluating the parties' contentions, the court reiterated West Virginia case law applicable to the parties' arguments:

> Before an insured is entitled to underinsured motorist benefits (UIM), they [sic] must first obtain a waiver of the underinsured carrier's right of subrogation against the tortfeasor before making a claim for those benefits. An insured voids their [sic] UIM coverage without doing so first. *Postlethwait v. Boston Old Colony Insurance Company*, [189 W.Va. 532,] 432 S.E.2d 802 (1993).
>
> It is well-settled in the State of West Virginia that a consent-to-settle provision of an automobile insurance policy pertaining to underinsured motorist coverage whereby an insured voids their [sic] UIM coverage by settling a claim with a tortfeasor without first obtaining the insurer's

---

ages resulting from said accident, casualty or event, as well as to those now disclosed.

I understand ... that said payment and settlement in compromise is made to terminate further controversy respecting all claims for damages that I have heretofore asserted or that I or my personal representative might hereafter assert because of the said accident[.]

Mrs. Kronjaeger also specifically excepted from the release any property damage claims that she may have arising from this accident: "This release shall not apply to damages for total loss of my automobile, or for the subrogation of such damages." Notations on the release indicate that the original release document was sent to Allstate.

4. The Kronjaegers' automobile insurance policy included the following exclusion to uninsured and/or underinsured motorist coverage, commonly referred to as a "consent-to-settle" clause: "A. We do not provide coverage under this endorsement for **property damage** or bodily injury sustained by any person: 1. If that person or the legal representative settles the bodily injury or

**property damage** claim without our written consent."

5. McDonough Caperton was also named as a defendant in the Ohio County, West Virginia, civil action. Although it is unclear from the record the precise nature of the relationship between Buckeye and McDonough Caperton, it does not appear that McDonough Caperton has contested its status as a party in this matter. Accordingly, subsequent references to Buckeye pertain also to McDonough Caperton.

6. Generally, our decision in *Bias* requires an insurer to comply with the statutory directives of W. Va.Code § 33–6–31(b) (1982) (Repl.Vol.1988), which requires an insurer to offer to an insured the option to purchase "underinsured motor[ist coverage] up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured." *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 126–27, 365 S.E.2d 789, 790–91 (1987). For a more detailed discussion of the *Bias* case, see *infra* note 23.

written consent when such claim involves either the insured's underinsurance or potentially involves that coverage is a valid and enforceable means by which an insurer may protect its statutorily-mandated right to subrogate such claims pursuant to *W. Va.Code,* § 33–6–31(f). *Arndt v. Burdett[e],* [189 W.Va. 722], 434 S.E.2d 394 (W.Va.1993); [*State ex rel.*] *AllState* [sic] [*Ins. Co.*] *v. Karl,* [190 W.Va. 176], 437 S.E.2d 749 (W.Va.1993).

The circuit court then determined that:

> It is undisputed in this case that the Plaintiff settled the underlying claim with the negligent tortfeasor without first obtaining a written waiver of the UIM carrier's subrogation rights. It is also undisputed that the UIM carrier's policy language contained a valid consent-to-settle provision which provided that it would not provide UIM coverage if the insured settled a bodily injury claim without its written consent.

Finding no genuine issue of material fact, the court concluded that because "the West Virginia Supreme Court of Appeals has consistently upheld a UIM carrier's right of subrogation and a UIM carrier's right to enforce a consent-to-settle provision of its insurance policy, the Court must also follow this well-settled authority and grant Defendants' Motion For Summary Judgment."

In addressing Mrs. Kronjaeger's argument that the defendant insurance companies had not been prejudiced by her failure to obtain either a waiver of their subrogation rights or their consent to settle the underlying claim, the circuit court stated "[i]t is the opinion of this Court that prejudice should also be a factor to be considered making it a requirement to be met when a UIM carrier presents the defenses set forth herein and upon which this Court bases its granting of Defendants' Motion For Summary Judgment." However, the court also found that, while the defendants may have been able to present evidence of prejudice, "the Court need not consider prejudice to be a factor in ruling on Defendants' Motion in light of the foregoing authority."

Finally, with regard to Mrs. Kronjaeger's argument that the defendant insurance companies had a duty to notify her of her underinsured motorist coverage and a duty to advise her to obtain their written consent to settle before settling her claim with the other driver, the circuit court, though "inclined to agree with [the plaintiff's] reasoning," declined to find the defendant insurance companies had any such duty. In sum, the court resolved that "[a]s compelling as Plaintiff's arguments are, they do not overcome the well-settled and consistently-followed rulings of our Supreme Court in *Postlethwait, Arndt, AllState* [sic] and *Barth* [*v. Keffer,* 195 W.Va. 51, 464 S.E.2d 570 (1995),] for the pre-requisites to be met before pursuing a UIM claim[.]" It is from this order of the circuit court granting summary judgment to the defendants below that Mrs. Kronjaeger appeals to this Court.

## II.

## DISCUSSION

On appeal to this Court, Mrs. Kronjaeger contests the circuit court's summary judgment order in favor of the defendants. Specifically, she argues that the circuit court erroneously: (1) dismissed her claims to underinsured motorist benefits based upon the "consent-to-settle clause" contained in her insurance policy; (2) failed to consider prejudice to the defendant underinsured motorist insurance carriers in upholding this "consent-to-settle clause"; and (3) declined to find that the defendants had a duty to (a) notify the Kronjaegers that they had underinsured motorist coverage and (b) advise them that they were required to obtain the defendants' consent to settle before they could enter a settlement with the other driver and/or his liability insurance carrier. After a brief discussion of the applicable standard of review, we address the merits of Mrs. Kronjaeger's contentions.

### A. Standard of Review

Generally, summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(c). More specifically, "[s]ummary judgment is mandated if the record, when reviewed most favorably to the

nonmoving party, discloses 'that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.'" *Payne v. Weston,* 195 W.Va. 502, 506, 466 S.E.2d 161, 165 (1995) (quoting Syl. pt. 3, in part, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963)).

■ As a guide for determining whether summary judgment should be granted in a particular case, we have noted that

"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Bauer Enters., Inc. v. Frye,* 181 W.Va. 234, 382 S.E.2d 71 (1989).

Syl. pt. 7, *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394 (1993). In other words,

"'Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.' Syl. pt. 4, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)."

Syl. pt. 3, in part, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995) (citation omitted).

■ In the case presently before us, the parties do not dispute the language or existence of the policy terms at issue. Rather, their dispute centers upon the interpretation and effect of these clauses under applicable standards of West Virginia insurance law. Nevertheless, as indicated below, several of the issues raised by the parties require further factual development before these matters can be finally resolved. Therefore, insofar as particular issues do not require further evidentiary determination, we conclude that the matter was ripe for the circuit court's disposition of the case by summary judg-

ment. Hence, we proceed to review the merits of the parties' contentions *de novo* as we typically review *de novo* a circuit court's entry of summary judgment. *See, e.g.,* Syl. pt. 1, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532; Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755. With respect to those certain other matters requiring additional factual development, we find that disposition of the case by summary judgment was premature and inappropriate.

### B. Recovery of Underinsured Motorist Benefits Vis-à-Vis Consent-to-Settle Clause and Prejudice to Insurer

#### 1. Arguments of the Parties

Mrs. Kronjaeger first assigns error to the circuit court's finding that she was not entitled to receive benefits under the underinsured motorist provisions of her automobile insurance policy based upon the consent-to-settle clause contained therein.[7] She claims that she is entitled to receive underinsured motorist benefits because the automobile insurance policy issued to her and her husband by Buckeye provided $50,000 underinsured motorist coverage per accident. Thus, she claims insurance benefits in the amount of $50,000 pursuant to the limits of underinsured motorist coverage provided by her policy. Mrs. Kronjaeger also contends that she is entitled to recover additional monies from Buckeye, in the form of additional underinsured motorist proceeds, in accordance with our prior decision in *Bias v. Nationwide Mutual Insurance Company,* 179 W.Va. 125, 365 S.E.2d 789 (1987). In this manner, she claims an entitlement to insurance benefits of $500,000 commensurate with the liability limits of her insurance policy.

Furthermore, Mrs. Kronjaeger urges this Court to adopt the practice of other jurisdictions that have held that an insurer's previous denial of coverage for underinsured motorist benefits effectively precludes the insurer from relying upon, or otherwise enforcing, a consent-to-settle clause where the insured, as a result of the previous denial of

---

7. For the text of the consent-to-settle clause contained in the Kronjaegers' insurance policy, see *supra* note 4.

coverage, has settled his/her claim with the other motorist and subsequently attempts to recover underinsured motorist benefits from his/her own insurer.[8] *See, e.g., Robertson v. United States Fidelity & Guar. Co.,* 836 P.2d 1294 (Okla.1992); *Kolbe v. Aegis Ins. Co.,* 370 Pa.Super. 539, 537 A.2d 7 (1987), *appeal denied,* 520 Pa. 576, 549 A.2d 136 (1988).

The defendant insurance companies respond that the circuit court correctly determined that Mrs. Kronjaeger had waived her entitlement to underinsured motorist benefits because she failed to obtain both a waiver of the defendants' subrogation rights and their consent to settle the underlying claim. In this regard, the defendants urge this Court to adhere to our prior decisions recognizing that a consent-to-settle clause is valid as an appropriate means by which an insurer may protect its statutory subrogation rights. *See, e.g., Barth v. Keffer,* 195 W.Va. 51, 464 S.E.2d 570 (1995); *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993); *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394 (1993).

Moreover, the defendants assert that Mrs. Kronjaeger's failure to follow this protocol for making an underinsured motorist claim usurped their statutory right of subrogation against the negligent tortfeasor provided by W. Va.Code § 33–6–31(f) (1982) (Repl.Vol. 1988).[9] While the defendants do not contest that Mrs. Kronjaeger may be able to recover additional monies from them after having recovered the full policy limits of the other driver's Allstate liability policy, they suggest that Mrs. Kronjaeger has this right to recover underinsured motorist benefits from them only after she has obtained a waiver of their rights to subrogation as against the other driver. *See Postlethwait v. Boston Old Colo-*

*ny Ins. Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993).

As her second assignment of error,[10] Mrs. Kronjaeger contends that the circuit court improperly upheld the consent-to-settle clause as a bar to her recovery of underinsured motorist benefits without determining whether, in fact, Buckeye had been prejudiced by her failure to obtain such consent. She indicates that this Court previously considered the issue of prejudice to an insurer where an insured failed to obtain the insurer's consent to settle in *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394. Unlike *Arndt,* however, in which the insurer was prejudiced because the insured settled with the tortfeasor's insurance carrier for less than the full policy limits, Mrs. Kronjaeger's settlement with Allstate on her husband's behalf for $50,000 constituted the full amount of the other driver's policy limits. Therefore, Mrs. Kronjaeger maintains that the defendants were not prejudiced by this settlement because she obtained the maximum amount of insurance available from the other driver. *See Tegtmeyer v. Snellen,* 791 S.W.2d 737 (Mo.Ct.App.1990) (finding no prejudice where insured settled for full policy limits).

To further support her contention, Mrs. Kronjaeger requests this Court to rule consistently with other jurisdictions which permit an insurer to withhold payment of underinsured motorist benefits when an insured has failed to obtain the insurer's consent to settle only where this dereliction prejudices the insurer. *See, e.g., Prudential Property & Casualty Ins. Co. v. Nayerahamadi,* 593 F.Supp. 216 (E.D.Pa.1984) (requiring showing of prejudice); *Marsh v. Prestige Ins. Group,* 58 Ill.App.3d 894, 16 Ill.Dec. 390, 374 N.E.2d 1268 (1978) (requiring showing of substantial prejudice); *Kapadia v. Preferred*

8. As will be discussed more fully below with respect to Mrs. Kronjaeger's second assignment of error, the parties suggest that had Mrs. Kronjaeger earlier filed a claim for underinsured motorist benefits, Buckeye would have refused payment of such benefits. *See infra* note 11 and accompanying text.

9. W. Va.Code § 33–6–31(f) (1982) (Repl.Vol. 1988) describes an insurer's subrogation rights, in part, as follows:

(f) An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section [regarding uninsured and underinsured motorists coverage] shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made[.]

10. For the purposes of our decision, we will address simultaneously Mrs. Kronjaeger's first two assignments of error.

*Risk Mut. Ins. Co.,* 418 N.W.2d 848 (Iowa 1988) (requiring showing of actual prejudice); *MacInnis v. Aetna Life & Casualty Co.,* 403 Mass. 220, 526 N.E.2d 1255 (1988) (requiring showing of material prejudice); *Tegtmeyer v. Snellen,* 791 S.W.2d 737 (Mo.Ct.App.1990) (requiring showing of prejudice); *Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 378 S.E.2d 21 (1989) (requiring showing of material prejudice).

In addition, Mrs. Kronjaeger asserts that Buckeye previously indicated that had she earlier filed a claim for underinsured motorist benefits, this claim would have been denied.[11] Since, as Mrs. Kronjaeger would have this Court find, a denial of coverage prevents an insurer from later enforcing a consent-to-settle clause, Buckeye could not have been prejudiced either by Mrs. Kronjaeger's failure to earlier file an underinsured motorist claim or by her failure to obtain Buckeye's consent to settle.

Finally, Mrs. Kronjaeger urges that Buckeye could not have been prejudiced by her failure to obtain its consent to settle since her settlement with Allstate did not fully compensate either her or her husband. In this regard the plaintiff proposes that since there can be no right of subrogation unless the insured has been completely compensated for his/her injuries, the premature Allstate settlement did not affect Buckeye's right to recover in subrogation.

By contrast, Buckeye challenges that the issue of whether the subject insurance carrier has been prejudiced by the insured's failure to obtain consent to settle is irrelevant to the present inquiry. Rather, the defendants assert that prejudice to the insurer should be considered only when the underinsured motorist carrier claims lack of notice or delay in filing an underinsured motorist claim. *See State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990). As the defendants have not raised as issues either a lack of notice or a delay in presenting the underinsured motorist claim, the circuit court

correctly determined that a consideration of prejudice to the insurer was not necessary to a resolution of the parties' dispute.

Alternatively, the defendants claim that if, in fact, this Court deems prejudice to be a relevant consideration, they have evidence demonstrating how they have been prejudiced by the plaintiff's actions. First, Mrs. Kronjaeger did not seek underinsured motorist benefits until November 17, 1992, more than eight-and-one-half years after the 1984 automobile accident. As a result of this delay, the defendants were precluded from participating in the lawsuit against the other driver from which Mrs. Kronjaeger recovered $7,500. The defendants argue further that they never waived their statutory subrogation rights to recover from the negligent tortfeasor although Mrs. Kronjaeger's settlement with the other driver and Allstate for $50,000 effectively releases any claims the defendants may have against this other driver.

### 2. Overview of West Virginia Insurance Law

■ Prior to reaching the specific issues raised by the parties to this appeal, we deem it necessary to review the law of this State as it pertains to the rights and obligations of both the insured and the insurer vis-à-vis underinsured motorist coverage. Generally, when an insurer sells a policy of automobile insurance to an individual, the insurer is required to offer the insured the option to purchase underinsured motorist coverage:

> (b) [S]uch policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured. "Un-

11. The plaintiff's argument in this regard does not specify why, exactly, this underinsured motorist claim would have been denied. However, the parties do indicate that the Buckeye policy required a comparison of the available coverages and that if the Kronjaegers' underinsurance coverage was less than or equal to the amount of liability coverage available from the other driver, Buckeye would deny the underinsured motorist claim in preference of recovery under the other motorist's liability policy.

derinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' [sic] coverage, or (ii) has [sic] been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorist's coverage. W. Va.Code § 33–6–31(b) (1982) (Repl.Vol. 1988).[12] Recognizing that "[u]nder W. Va. Code, 33–6–31(b), there is a statutory basis for requiring ... underinsured motor vehicle coverage in this state," Syl. pt. 3, in part, *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994), we have noted " '[i]n short, underinsured motorist coverage is intended to compensate parties for injuries caused by other motorists who are underinsured.' " *Castle v. Williamson,* 192 W.Va. 641, 644, 453 S.E.2d 624, 627 (1994) (quoting *Alexander v. State Auto. Mut. Ins. Co.,* 187 W.Va. 72, 79, 415 S.E.2d 618, 625 (1992)). In other words, "[u]nderinsurance coverage is an optional coverage that an insure[d] may purchase and is in the nature of excess coverage. It is not intended to be liability insurance." *Castle,* 192 W.Va. at 647, 453 S.E.2d at 630.

 Having decided several cases involving underinsured motorist insurance, we have established various guidelines for asserting such claims. An insured may file a claim for underinsured motorist benefits when his/her injuries have not been fully compensated by the tortfeasor's liability coverage:

"In light of the preeminent public policy of the underinsured motorist statute, which is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, this Court holds that underinsured motorist coverage is activated under *W. Va.Code,* 33–6–31(b), as amended, when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total

amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits." Syl. Pt. 5, *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990).

Syl. pt. 5, *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394. However, the insured is not entitled to a windfall recovery under his/her underinsurance policy; rather,

"*W. Va.Code,* 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits." Syllabus Point 4, *State Automobile Mutual Insurance Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990).

Syl. pt. 2, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749. *See also* Syl. pt. 4, in part, *State ex rel. Allstate Ins. Co. v. Karl, id.* ("An underinsured motorist carrier occupies the position of an excess or additional insurer in regard to the tortfeasor's liability carrier, which is deemed to have the primary coverage."). In further protection of the insured's right to collect underinsured motorist benefits, we held in Syllabus point 4 of *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791:

Under W. Va.Code, 33–6–31(b), an insurance carrier is statutorily required to pay to its insured, who has uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an

---

**12.** It should be noted that statutory references in this decision will refer, where appropriate, to those code sections in effect at the time of the underlying accident in this case.

uninsured or underinsured motor vehicle. W. Va.Code, 33–6–31(b).

However, "[t]he statutory obligation of an insurer to pay under W. Va.Code, 33–6–31(b) is confined to the policy limits of the uninsured or underinsured motorist coverage." Syl. pt. 5, in part, *Marshall v. Saseen, id.*

■ In addition to the right of the insured to purchase underinsured motorist coverage and to recover under this policy, the insurer providing underinsurance also has recognized rights with regard to honoring a claim for such benefits. First, and foremost, an insurer has a statutory right of subrogation pursuant to W. Va.Code § 33–6–31(f) (1982) (Repl. Vol.1988):

> (f) An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made[.]

*See also* Syl. pt. 2, *Barth v. Keffer,* 195 W.Va. 51, 464 S.E.2d 570 (" 'W.Va.Code, 33–6–31(f) (1988),[13] authorizes a right of subrogation by an uninsured or underinsured insurance carrier for the amount paid to an injured person as against the tortfeasor.' Syllabus Point 3, *Postlethwait v. Boston Old Colony Ins. Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993)."). Furthermore, we have noted that "[t]he statutory subrogation right contained in W. Va. Code, 33–6–31(f) (1988),[14] ordinarily precludes an injured party from settling for less than the liability policy limits of the tortfeasor and giving a general release without the consent of the underinsured motorist carrier that has coverage for the injured party." Syl. pt. 4, *Barth v. Keffer,* 195 W.Va. 51, 464 S.E.2d 570. *But cf.* Syl. pt. 11, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 ("The right of subrogation in W. Va.Code, 33–6–31(f) (1988),[15] is not available where the policyholder has not been fully compensated for the injuries received and still has the right to recover from other sources. Subrogation is permitted only to the extent necessary to avoid a double recovery by such policyholder.").

■ We further have recognized the authority of an insurer to draft a policy of insurance containing specific criteria governing an insured's recovery of benefits under that policy. In Syllabus point 2 of *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394, we held:

> "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989).

Moreover,

> " 'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. Pt. 1, *Russell v. State Auto. Mut. Ins. Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992).

Syl. pt. 1, *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394. *See also* Syl. pt. 2, in part, *Miller v. Lemon,* 194 W.Va. 129, 459 S.E.2d 406 (1995) ("Language in an insurance policy should be given its plain, ordinary meaning." (Citations omitted).); Syl. pt. 2, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (" 'Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.' Syl. Pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.,* 175 W.Va. 337, 332 S.E.2d 639, 640, [sic] (1985)." (Citations omitted).). Among the insurance policy clauses we have determined to be permissible, and with particular relevance to the in-

---

**13.** The 1988 amendments to W. Va.Code § 33–6–31 did not alter the language of subsection (f). *Compare* W. Va.Code § 33–6–31(f) (1982) (Repl. Vol.1988) *with* W. Va.Code § 33–6–31(f) (1988) (Repl.Vol.1992).

**14.** *See supra* note 13.

**15.** *See supra* note 13.

stant appeal, we have upheld the validity of consent-to-settle clauses:

> "A consent-to-settle provision of an automobile insurance policy pertaining to underinsured motorist[s] coverage whereby an insured voids his underinsurance coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent when such claim involves either the insured's underinsurance coverage or potentially involves that coverage is a valid and enforceable means by which an insurer may protect its statutorily-mandated right to subrogate claims pursuant to West Virginia Code § 33–6–31(f) (1992)."[16]

Syllabus Point 3, *Arndt v. Burdette*, 189 W.Va. 722, 434 S.E.2d 394 (1993).

Syl. pt. 7, *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749.

### 3. *Decision of the Court*

■ Though we previously have held that consent-to-settle clauses are valid and enforceable with regard to underinsured motorist coverage, the case *sub judice* presents a unique factual situation. In our prior cases upholding the insurer's right to enforce these clauses, the insured policyholder generally has settled with the tortfeasor's insurer for less than the full policy limits of the tortfeasor's liability coverage. *See, e.g., Barth v. Keffer*, 195 W.Va. at 53 & n. 3, 464 S.E.2d at 572 & n. 3 (insured settled with other driver for $15,000; other driver had liability coverage of $50,000); *Arndt v. Burdette*, 189 W.Va. at 725–26, 434 S.E.2d at 397–98 (insured settled with other driver for $1,250; other driver had liability coverage of $100,000).

By contrast, the instant appeal involves a situation in which the insureds, the Kronjaegers, settled with the other driver's insurer for the full amount of his liability coverage. As noted above, the primary rationale for

upholding "consent-to-settle language in an underinsured policy is [to] protect[ ] the insurer's statutory subrogation right." *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. at 183, 437 S.E.2d at 756. However, the facts presently before us suggest that, given the Kronjaegers' maximum recovery from the other driver, there are no additional, untapped insurance funds for Buckeye. to pursue as reimbursement for its underinsurance payments to the Kronjaegers.[17] Thus, the usual overriding concerns of protecting the insurer's subrogation rights do not dictate the enforcement of the consent-to-settle clause in this particular case.

Our inquiry does not end here, though, as the facts presented by the parties still indicate that Mrs. Kronjaeger failed to abide by the stated policy language requiring her to obtain Buckeye's consent before settling her claims with the other driver. In this respect, Mrs. Kronjaeger proposes that regardless of her failure to obtain Buckeye's consent to settle, she remains entitled to receive underinsured motorist benefits so long as her dereliction did not prejudice Buckeye's right to subrogation against the other driver. Counsel for Mrs. Kronjaeger aptly notes that other jurisdictions tending to uphold consent-to-settle clauses require an insurer to show prejudice as a result of the insured's failure to obtain consent before entering a settlement. *See, e.g., Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848 (Iowa 1988); *Tegtmeyer v. Snellen*, 791 S.W.2d 737 (Mo. Ct.App.1990); *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 378 S.E.2d 21 (1989).

■ Despite this vast array of persuasive authority from our sister jurisdictions, we need look no further than our own prior decisional law in this field to resolve whether prejudice to the insurer is a necessary inquiry when an insured fails to abide by a consent-to-settle provision. Here, we are faced

---

16. The version of W. Va.Code § 33–6–31(f) in effect in 1992 was the 1988 version of this statute, which remained unaffected by the 1988 amendments thereto. *See supra* note 13.

17. The release signed by Mrs. Kronjaeger released the other driver from all liability for personal injuries occasioned by the accident. Whether the other driver had personal assets against which Buckeye may have sought subro-

gation is unclear from the record. This uncertainty, though, will not, in and of itself, prevent our resolution of this issue. In the proceedings below, Buckeye moved for summary judgment. Accordingly, the record must be "reviewed most favorably to the nonmoving party," in this case Mrs. Kronjaeger. *Payne v. Weston*, 195 W.Va. 502, 506, 466 S.E.2d 161, 165 (1995).

with a situation facially analogous to that in *Charles v. State Farm Mutual Automobile Insurance Company*, 192 W.Va. 293, 452 S.E.2d 384 (1994). *Charles* centered around an insured's lack of cooperation with its insurer's attempt to provide benefits in the form of legal defense services. 192 W.Va. at 296–97, 452 S.E.2d at 387–88. The case *sub judice* involves an insured's failure to abide by its insurer's procedures for dispersing underinsured motorist benefits. In Syllabus point 5 of *Charles*, we held "['b]efore an insurance policy will be voided because of the insured's failure to cooperate, such failure must be substantial and of such nature as to prejudice the insurer's rights.['] Syllabus Point 1, *Bowyer by Bowyer v. Thomas*, 188 W.Va. 297, 423 S.E.2d 906 (1992)." 192 W.Va. 293, 452 S.E.2d 384.[18] Ruling consistently with our prior precedent, we therefore hold that in cases such as the one presently before us, where an insured has failed to obtain his/her insurer's consent before settling with a tortfeasor but in settling has procured the full policy limits available under the tortfeasor's insurance policy, the insurer must show that it was prejudiced. by its insured's failure to obtain its consent to settle in order to justify a refusal to pay underinsured motorist benefits.[19]

Because the circuit court concluded that it "need not consider prejudice to be a factor in ruling on Defendants' Motion," we remand this case with instructions for the circuit court to determine whether the defendant underinsured motorist carriers suffered prejudice by the Kronjaegers' failure to obtain their consent to settle. Instructive to such a determination are (1) the Kronjaegers' recovery of the other driver's full policy limits; (2) the inapplicability of the statutory notice requirement; and (3) the lack of surprise to Buckeye upon receipt of the Kronjaegers' late-filed claim. First, as noted above, Mrs. Kronjaeger's settlement with the other driver resulted in her recovery of the maximum liability limits available under the other driver's policy of insurance. In this regard, it appears that no other funds were available from the other driver from which Buckeye could obtain reimbursement of any underinsured benefits it might pay to Mrs. Kronjaeger.

■ Second, although the present statutory law in this State requires an insured to notify his/her insurer of his/her intent to seek coverage under either an uninsured or underinsured motorist provision, at the time of the underlying events in the instant case, this statutory notice requirement pertained only to *uninsured* motorist claims. W. Va.Code § 33–6–31(d) (1982) (Repl.Vol.1988) requires, in relevant part:

> (d) Any insured intending to rely on the coverage required by subsection (b) of this section [regarding mandatory uninsured motorist coverage and optional underinsured motorist coverage] shall, if any action be instituted against the owner or

---

**18.** In Syllabus point 6 of *Charles*, we held specifically with respect to cooperation clauses: "['][I]n addition to prejudice, the insurer must show that its insured willfully and intentionally violated the cooperation clause of the insurance policy before it can deny coverage.['] Syllabus Point 2, *Bowyer v. Bowyer v. Thomas*, 188 W.Va. 297, 423 S.E.2d 906 (1992)." 192 W.Va. 293, 452 S.E.2d 384. As the present appeal does not specifically involve a cooperation clause, this portion of *Charles* does not directly impact our resolution of this case.

**19.** We also recognized the importance of prejudice to the insurer in *State Automobile Mutual Insurance Company v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990). In that case we held that:

> In an uninsured or underinsured motorist case, prejudice to the investigative interests of the insurer is a factor to be considered, along with the reasons for delay and the length of delay, in determining the overall reasonableness in giving notice of an accident.... [T]he insurer must ... demonstrate that it was prejudiced by the insured's failure to give notice sooner.

Syl. pt. 2, in part, 183 W.Va. 556, 396 S.E.2d 737. While, as noted above, Buckeye contends that the Kronjaegers should have earlier notified it of their intention to request underinsured motorist benefits, Buckeye does not appear to contest the adequacy of the Kronjaegers' initial notification of the accident shortly after its occurrence. In this regard, the instant appeal is factually distinguishable from *Youler* in which the insureds did not notify their insurer they were involved in an automobile accident until nearly three years later. Accordingly, since the adequacy of the Kronjaegers' notice is not contested, the remaining dictates of *Youler* do not apply to this case.

operator of an *uninsured* motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the *uninsured* motor vehicle or in its own name[.]

(Emphasis added).[20]

As we often have held, where the language of a statute is plain and unambiguous, the statute will be applied and not construed. *See, e.g.*, Syl. pt. 1, in part, *Personnel Temporary Servs. v. West Virginia Div. of Labor Contractor Licensing Bd.*, 197 W.Va. 149, 475 S.E.2d 149 (1996) ("When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute." (Citations omitted).); *City of Princeton v. Stamper*, 195 W.Va. 685, 689, 466 S.E.2d 536, 540 (1995) (" '[W]hen the language of a statute is clear and unambiguous, the courts will apply, not construe [sic] such language.' " (quoting *Rite Aid of W. Va., Inc. v. City of Charleston*, 189 W.Va. 707, 709, 434 S.E.2d 379, 381 (1993) (citation omitted))); Syl. pt. 2, in part, *West Virginia Dep't of Health & Human Resources ex rel. Wright v. David L.,* 192 W.Va. 663, 453 S.E.2d 646 (1994) ("Courts always endeavor

to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed." (Citations omitted).).

The previous statutory language applicable to this case clearly requires an individual seeking *uninsured* motorist benefits to notify his/her insurer of such an action but does not impose a similar duty upon those attempting to recover *underinsured* motorist benefits. In fact, this particular statutory provision makes no reference whatsoever to underinsured motorist coverage. Therefore, application of the plain and unambiguous statutory language indicates that the Kronjaegers had no statutory duty to notify Buckeye of their intent to commence an action against the other driver in order to preserve their right to recover *underinsured* motorist benefits.[21]

Third, and last, the parties' characterization of the facts suggests that Buckeye could not have been unduly surprised by Mrs. Kronjaeger's underinsurance claim because it already had been apprised of the extent of the Kronjaegers' injuries. The parties indicate that Mrs. Kronjaeger notified Buckeye of the accident shortly after it occurred. Adjusting the claim pursuant to Pennsylvania law, Buckeye paid approximately $1,000,000 in medical benefits as reimbursement of the Kronjaegers' medical expenses. Given Buckeye's cognizance of the Kronjaegers' damages, Mrs. Kronjaeger's subsequent request for underinsured motorist benefits in an attempt to receive full compensation can hardly be said to have been unexpected.[22]

**20.** In 1988, W. Va.Code § 33–6–31(d) was amended to apply to actions to recover both uninsured and underinsured motorist benefits. *See* W. Va.Code § 33–6–31(d) (1988) (Repl.Vol. 1992). *See also* Syl. pt. 1, *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994) ("[']"W.Va. Code, 33–6–31(d) *(1988)*, outlines certain rights given to an uninsured/*underinsured* insurance carrier where a tortfeasor who is uninsured *or underinsured* is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier 'the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both[,] of the uninsured *or underinsured* [motor] vehicle or in its own name.' " Syllabus Point 1, *Postlethwait v. Boston Old Colony Ins. Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993).['] Syllabus Point 3, *State ex rel. Allstate*

*Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993)." (Emphasis added).).

**21.** At this juncture, we wish to reiterate that while the Kronjaegers, at the time of their accident in 1984, had no statutory duty to notify Buckeye of their intent to pursue an underinsured motorist claim, the West Virginia Legislature, in 1988, established a statutory notice requirement with regard to underinsured motorist claims. *See supra* note 20.

**22.** We wish to emphasize that we in no way condone the actions of Mrs. Kronjaeger, or her attorneys, in waiting to make a claim for underinsured motorist benefits until over eight-and-one-half years after the date of the accident when both she and her counsel were able to determine at a much earlier date that the settlements with the other driver would not fully compensate the

Absent additional evidence of prejudice, we think the above-stated facts strongly suggest that Buckeye did not suffer prejudice as a result of the Kronjaegers' settlement. Therefore, despite our prior decisions upholding consent-to-settle clauses in order to protect the insurer's statutory right to subrogation, the facts of the present case suggest the need for a slight deviation from these holdings. Thus, we find that the circuit court erred by awarding summary judgment to Buckeye and denying Mrs. Kronjaeger's request for underinsured motorist benefits. We therefore reverse the order of the circuit court insofar as it enforced the consent-to-settle clause and barred Mrs. Kronjaeger's recovery of underinsurance benefits. Upon remand, we direct the circuit court to determine whether Buckeye was prejudiced by the Kronjaegers' failure to obtain its consent to settle before settling with the other driver for the full limits of his automobile insurance policy. We further remand this case for the taking of evidence to establish the amount of Mrs. Kronjaeger's uncompensated losses and her entitlement to underinsured motorist benefits. In this manner, the court should receive evidence of the Kronjaegers' damages and, if Mrs. Kronjaeger is entitled to receive underinsured motorist benefits, should award such underinsured benefits in accordance with our prior directive in *State ex rel. Allstate Insurance Company v. Karl:*

> "W. Va.Code, 33–6–31(b), as amended, on ... underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the

accident was an owner or operator of an ... underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits." Syllabus Point 4, [in part,] *State Automobile Mutual Insurance Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990).

Syl. pt. 2, in part, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749. We also wish to add that "[t]he statutory obligation of an insurer to pay under W. Va.Code, 33–6–31(b) is confined to the policy limits of the ... underinsured motorist coverage." Syl. pt. 4, in part, *Morrison v. Haynes,* 192 W.Va. 303, 452 S.E.2d 394 (1994) (citations omitted).

■ This decision leads us next to a sub-issue raised by Mrs. Kronjaeger as to the amount of underinsured motorist benefits she is entitled to collect. She asserts that not only is she entitled to collect the $50,000 limits of her underinsurance coverage but that she also should receive additional underinsurance benefits of $500,000 commensurate with her liability coverage limits. Mrs. Kronjaeger claims these additional liability-based benefits in reliance on our prior decision in *Bias v. Nationwide Mutual Insurance Company,* 179 W.Va. 125, 365 S.E.2d 789 (1987).[23]

---

Kronjaegers' losses. Rather, we believe the better practice is to require an insured who has underinsured motorist coverage to notify his/her insurer as soon as practicable after an accident (1) of his/her intent to file a claim for underinsured motorist benefits or (2) that the accident potentially involves a claim for underinsured motorist benefits.

**23.** In *Bias,* we examined the language of W. Va.Code § 33–6–31(b) (1982) (Repl.Vol.1988), the same code provision applicable to the instant appeal, which requires "that an underinsurance option *shall* be offered" to an insured:

> (b) [S]uch policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as

damages from the owner or operator of an ... underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured.
179 W.Va. at 127, 365 S.E.2d at 791. We determined, in Syllabus point 1, that "[w]here an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." 179 W.Va. 125, 365 S.E.2d 789. We further determined that when an insurer could not prove that it indeed had offered an insured the option to purchase underinsurance in an amount equal to the liability limits purchased, such coverage would be included in the insured's policy by operation of law: "When an insurer is

A review of the proceedings before the circuit court indicates that the court below did not determine, or in any way address, whether Mrs. Kronjaeger would be entitled to receive additional underinsurance benefits equal to her liability coverage. Likewise, the record tends to indicate that Mrs. Kronjaeger did not raise this contention in response to the defendants' motion for summary judgment. We frequently have held that issues which do not relate to jurisdictional matters and which have not been raised before the circuit court will not be considered for the first time on appeal to this Court. *See, e.g.,* Syl. pt. 2, in part, *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996) (" '[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below[.]' Syl. Pt. 6, in part, *Parker v. Knowlton Const[r]. Co., Inc.,* 158 W.Va. 314, 210 S.E.2d 918 (1975)."); Syl. pt. 2, in part, *State v. Francisco,* 199 W.Va. 223, 483 S.E.2d 806 (1996) (per curiam) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." (Citations omitted).); *Whitlow v. Board of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." (Citations omitted).); *Michigan Nat'l Bank v. Mattingly,* 158 W.Va. 621, 626, 212 S.E.2d 754, 757–58 (1975) ("[T]his Court will not consider nonjurisdictional questions not acted upon by the trial court." (Citation omitted).). *See generally* 1B Michie's Jurisprudence *Appeal and Error* § 242 (1995) ("[T]he supreme court of appeals will not consider questions not yet acted on by the lower court in the case." (Footnote omitted).). *Cf. Loar v. Massey,* 164 W.Va. 155, 159–60, 261 S.E.2d 83, 86–87 (1979) (" '[I]t has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal.' " (quoting *Konchesky v. S.J. Groves & Sons Co., Inc.,* 148 W.Va. 411, 414, 135 S.E.2d 299, 302 (1964) (citations omitted))).

This issue of Mrs. Kronjaeger's entitlement to additional underinsurance benefits in an amount equal to the liability coverage of the Kronjaegers' policy not having been decided by the circuit court, it is not ripe for appellate consideration by this Court. Accordingly, we remand to the circuit court the issue of whether Mrs. Kronjaeger is entitled to receive additional underinsurance benefits in accordance with our prior decision in *Bias v. Nationwide Mutual Insurance Company,* 179 W.Va. 125, 365 S.E.2d 789 (1987).

### C. Duty of Underinsured Motorist Carrier to Notify Insured of (1) Underinsurance and (2) Insured's Duty to Obtain Carrier's Consent to Settle

Finally, Mrs. Kronjaeger asserts that the circuit court erroneously declined to find that Buckeye had a duty (1) to notify the Kronjaegers of the existence of underinsured motorist coverage and (2) to advise them that they must obtain Buckeye's consent to settle prior to settling their claims with the other driver. In support of her argument that such a duty does, in fact, exist, the plaintiff cites *MFA Mutual Insurance Company v. Flint,* 574 S.W.2d 718 (Tenn.1978). The Tennessee Supreme Court recognized a duty, on the part of an insurer, to deal with its insureds "fairly and in good faith" and required the insurer to inform its insureds of the extent of *uninsured* motorist coverage prior to the insureds' settlement with their insurer. *Id.* Similarly, in *Rutherford v. Tennessee Farmers Mutual Insurance Company,* 608 S.W.2d 843 (Tenn.1980), the court found the same duty applied to a carrier of *underinsured* motorist coverage where the insurer never cautioned its insured to obtain the insurer's consent to settle prior to settling with the tortfeasor. Likewise, Buckeye never advised Mrs. Kronjaeger of the available underinsured motorist coverage or of

required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." Syl. pt. 2, *Bias,* 179 W.Va. 125, 365 S.E.2d 789.

the consent-to-settle provision relating to this coverage.

The defendants counter that they had no duty to advise Mrs. Kronjaeger of either her underinsured motorist coverage or her obligation to obtain their consent to settle before resolving her claim with the other driver. Rather, the defendants suggest that Mrs. Kronjaeger's counsel should have informed her of the consent-to-settle provision before allowing her to proceed with the Allstate settlement. Likewise, the defendants contend that Mrs. Kronjaeger's counsel also should have advised her that such consent had to be obtained before she could make a claim for underinsured motorist benefits.

Further denying that such a duty exists, the defendants assert that while Mrs. Kronjaeger, herself, may not have been aware of the underinsured motorist coverage, she was not involved in any of the Kronjaegers' insurance decisions until her husband became incapacitated in March, 1984. Moreover, the defendants state that, because the underinsured motorist coverage plainly appears on the face of the policy, Mrs. Kronjaeger cannot be permitted to blame them for failing to notify her of such coverage. Finally, replying to the Tennessee cases proffered by Mrs. Kronjaeger in support of her argument, the defendants state that these cases may be factually distinguished from the present case.

An examination of the cases cited by Mrs. Kronjaeger in support of her contention suggests that these precedents do not pertain directly to the factual situation at hand. The first-cited case, *MFA Mutual Insurance Company v. Flint*, 574 S.W.2d 718, deals with an insurer's duty to deal fairly and in good faith with its insured in the course of settlement negotiations and does not create a blanket rule generally requiring insurers to notify their insureds as to the existence and extent of available coverage. Contrariwise, the record in the present appeal suggests that no settlement discussion occurred between Buckeye and the Kronjaegers. The second case relied upon by Mrs. Kronjaeger, *Rutherford v. Tennessee Farmers Mutual Insurance Company*, 608 S.W.2d 843, though more directly on point with the present facts, still does not govern our decision of this case. In *Rutherford*, the Supreme Court of Tennessee found that an insurer had waived its right to rely upon the "consent-to-settle" policy exclusion to underinsured motorist coverage when it failed to inform either the insured or her counsel of this provision following a request, by the insured's counsel, for information regarding available coverages. *Id.* While counsel for Mrs. Kronjaeger did inquire of Buckeye regarding the available coverage for payment of medical expenses, this medical payment coverage was separate from the underinsured motorist coverage at issue in this appeal. Therefore, we decline Mrs. Kronjaeger's invitation to adopt the standard enunciated by our sister state of Tennessee.

Looking to our own precedent, we can find no authority requiring an insurer to notify its insured of available coverage following notification of a loss or to advise its insured as to the limits of such coverage.[24] In some situations, we have required an insurer to provide its insured with notice of the cancellation of an insurance policy, *see, e.g.*, Syl., *Elkins v. State Farm Mutual Automobile Insurance Company*, 197 W.Va. 412, 475 S.E.2d 504 (1996) (per curiam); *Smith v. Municipal Mutual Insurance Company*, 169 W.Va. 296, 289 S.E.2d 669 (1982), or to inform its insured that it will deny coverage, *see, e.g.*, Syl. pt. 1, *Keller v. First National Bank*, 184 W.Va. 681, 403 S.E.2d 424 (1991); *Thompson v. West Virginia Essential Property Insurance Association*, 186 W.Va. 84, 411 S.E.2d 27 (1991). Both of these scenarios, though, involve an affirmative action on the part of the insurer in dealing with a policy of insurance that will have a potentially detrimental impact upon its insured: an affirmative deci-

---

**24.** Likewise, reviewing decisions of other jurisdictions, we can find no authority placing an affirmative duty upon an insurer to notify its insured as to the existence of coverage and any limitations thereon. Decisions specifically denying that such a duty exists include *Buffalo Insurance Company v. Star Photo Finishing Company*, 120 Ga.App. 697, 172 S.E.2d 159 (1969), and *Gurley v. Ford Motor Credit Company*, 163 Ga. App. 875, 296 S.E.2d 171 (1982). *Cf. Compton v. Nationwide Mut. Ins. Co.*, 480 F.Supp. 1254 (W.D.Va.1979) (holding that insurer has no duty to notify its insured of the expiration of a fire policy).

sion to cancel an insurance policy or an affirmative decision to deny coverage.

By contrast, the duty Mrs. Kronjaeger requests this Court to impose involves affirmative duties on the part of the insured which typically precede temporally the situations outlined above in which we have required notice. Prior to recovering underinsured motorist benefits, the insured must affirmatively make a claim for such benefits, and, if the insured wishes to settle with the other driver, the insured must affirmatively obtain its insurer's consent to settle before proceeding with the settlement. The situations contemplated by Mrs. Kronjaeger as requiring notice involve neither an affirmative action on the part of the insurer nor an affirmative decision by the insurer that could have a detrimental effect on the insured. An even less compelling reason for adopting Mrs. Kronjaeger's position is the fact that, in the State of West Virginia, underinsured motorist coverage is optional. Therefore, inclusion of such coverage in an automobile insurance policy is typically the result of a decision by the insured to purchase such coverage. To require an insurer to inform an insured about coverage the insured him/herself purchased is nothing short of absurd.

■ In light of the foregoing authority and our analysis thereof, we hold that an insurer has no affirmative duty either (1) to notify its insured of the existence of underinsured motorist coverage or (2) to advise its insured that he/she must obtain the insurer's consent to settle prior to settling his/her claims with a tortfeasor. Accordingly, we affirm the decision of the circuit court insofar as the court found that Buckeye had no such duty to notify Mrs. Kronjaeger.[25]

## III.

### CONCLUSION

In summary, we hold that where an insured has failed to obtain his/her insurer's consent before settling with a tortfeasor but in settling has procured the full policy limits available under the tortfeasor's insurance policy, the insurer must show that it was prejudiced by its insured's failure to obtain its consent to settle in order to justify a refusal to pay underinsured motorist benefits. Because the circuit court determined that Mrs. Kronjaeger's failure to obtain Buckeye's consent to settle her claims against the other driver automatically precluded her recovery of underinsurance benefits, we reverse that portion of the circuit court's order denying such benefits. Upon remand, the circuit court should determine whether Buckeye suffered prejudice as a result of the Kronjaegers' failure to obtain its consent to settle before settling with the other driver. Moreover, we remand this case for the taking of further evidence to determine whether Mrs. Kronjaeger is entitled to recover underinsured motorist benefits and, if recovery of such benefits is warranted, the amount of such award. In this regard, we also remand for a determination of whether additional underinsurance benefits would be appropriate in accordance with our prior decision in *Bias v. Nationwide Mutual Insurance Company*, 179 W.Va. 125, 365 S.E.2d 789 (1987).

Finally, we hold that an insurer has no affirmative duty either (1) to notify its insured of the existence of underinsured motorist coverage or (2) to advise its insured that he/she must obtain the insurer's consent to settle prior to settling his/her claims with a tortfeasor. Accordingly, we affirm that portion of the circuit court's order declining to find that Buckeye had such a duty.

Affirmed in part, Reversed in part, and Remanded with Instructions.

---

**25.** Our determination that an insurer has no duty to notify its insured as to the existence of underinsurance or a consent-to-settle policy provision does not abrogate an insurer's overarching duty to deal with its insured fairly and in good faith.

*See State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady*, 197 W.Va. 107, 115, 475 S.E.2d 107, 115 (1996) (recognizing "an insurer's obligation of good faith and fair dealing to its insured" (citations omitted)).