466 S.E.2d 536

CITY OF PRINCETON, Appellant,

v.

Samantha STAMPER, Appellee,

and

CITY OF PRINCETON, Appellant,

v.

John B. CONLEY and Garnett
Conley, Appellees.

CITY OF PRINCETON, Appellee,

v.

Samantha STAMPER, Appellant,

and

CITY OF PRINCETON, Appellee,

v.

John B. CONLEY and Garnett
Conley, Appellants.

Nos. 22853, 22880.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 19, 1995.

Decided Dec. 13, 1995.

Anthony Bisaha, Princeton, for City of Princeton.

Danny W. Barie, Athens, for Stamper and Conleys.

RECHT, Justice:

This appeal involves the interpretation of an ordinance (herein the "Ordinance") enacted by the City of Princeton (herein "City") providing a comprehensive system for the collection and disposal of garbage, refuse and waste within the city limits of Princeton.

The genesis of this case was the attempt by the City of Princeton to collect unpaid refuse disposal charges against Samantha Stamper and John B. and Garnett Conley (herein "appellants"), residents of the City of Princeton. The appellants justify their non-payment of the collection charges by contending that because they did not use the refuse collection service provided by the City, they should be exempt from paying any charge. Specifically, Ms. Stamper elected to use the collection services of a private hauler, and Mr. and Mrs. Conley chose to self-dispose their refuse.

The Circuit Court of Mercer County granted summary judgment to the City, concluding that the payment of the refuse collection fee was not dependent on use. A corollary to the City's efforts to charge a fee for refuse collection and disposal from a non-using resident is whether a resident has a right to use an alternative method of collecting and disposing of refuse, or is the City of Princeton the exclusive agency to collect and dispose of refuse within the city. The circuit court held that the Ordinance does not provide such exclusivity.

We are invited then to address two discrete but interrelated questions. The first question involves whether the City of Princeton can extract a charge from all residents for refuse removal even though a resident chooses not to use the municipal service.[1] The second question addresses whether the Ordinance empowers only the City of Princeton with the authority to remove all residential refuse to the exclusion of any private refuse collector or self-disposal by a resident.[2]

Both questions associated with this appeal require an analysis of Article 1131 of the Princeton City Code, entitled "Refuse Disposal."[3] The language of the Ordinance is not helpful in the resolution of the first question. Instead, the first question is answered by a determination that the charge for refuse removal is not dependent on actual use, but is a reasonable exercise of municipal police power which elevates the preservation of public health of an entire community over a resident's right to avoid payment of a critical municipal service by electing not to use that service. The second question may be answered within the clear meaning of the Ordinance.

■■■ The City of Princeton derives its power to impose a fee for the collection and disposal of refuse by virtue of W.Va.Code 8–

13–13 (1971).[4] Municipalities have broad plenary power to impose fees for the collection and disposal of garbage. W.Va.Code 8–13–13 (1971). "Under the police power of the State, the Legislature has power to provide for the protection of the safety, health, morals and general welfare of the public, and may delegate such powers to municipalities created by it." Syllabus Point 1, *Hayes v. Town of Cedar Grove*, 126 W.Va. 828, 30 S.E.2d 726 (1944), *overruled on other grounds by Long v. City of Weirton*, 158 W.Va. 741, 774, 214 S.E.2d 832, 854 (1975).

■■■ This analysis develops that the City of Princeton has the power to enact an ordinance regulating the collection and disposal of refuse. We now will examine the two questions raised in this appeal within the context as to whether it is reasonable for the City of Princeton to collect a fee for a municipal service relating to the disposal of refuse from a resident who chooses not to use that service. Also, is it reasonable to permit the City of Princeton to be the exclusive residential refuse disposal agent within the city? "The standard of review of an ordinance exercising such power as that granted by [W.Va.Code 8–13–13 (1971)] is the reasonableness of the ordinance." *Ellison v. City*

---

1. The circuit court granted summary judgment to the City of Princeton on the collection issue within the framework of two certified questions. The content of these questions, while differing slightly in language, produces the same issue as we have stated in this "first question."

2. The circuit court framed this issue with a certified question as "[w]hether it is constitutional under West Virginia Code Section 8–12–5 and other pertinent provisions of the West Virginia Code, for the City of Princeton to require that all of its residents [sic] refuse 'be removed only by the City of Princeton and its employees?'" Since we review the granting of summary judgment de novo, Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), we believe that a slight reformation of the language of the issue does not change the essential theme of this question—the municipality's exclusivity in collection and disposing of residential refuse.

3. There is no reason to recite the entire Ordinance in this opinion. We will, of course, reproduce those portions of the Ordinance relevant to answering the questions presented on appeal.

4. W.Va.Code 8–13–13 (1971) provides:

> [E]very municipality which furnishes any essential or special municipal service, including, but not limited to, police and fire protection, parking facilities on the streets or otherwise, parks and recreational facilities, street cleaning, street lighting, street maintenance and improvement, sewerage and sewage disposal, and the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter, shall have plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of such service, to make reasonable regulations with respect thereto, *and to impose by ordinance upon the users of such service* reasonable rates, fees and charges to be collected in the manner specified in the ordinance: Provided, That any sewerage and sewage disposal service and any service incident to the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter shall ,be subject to the provisions of chapter twenty-four [§ 24–1–1 et seq.], of this code.

W.Va.Code 8–13–13 (1971) (emphasis added).

of Parkersburg, 168 W.Va. 468, 472, 284 S.E.2d 903, 906 (1981).

## EXEMPTION FROM PAYMENT OF REFUSE CHARGE

We begin this analysis by recognizing that the Ordinance is silent as to whether any resident of the City of Princeton can escape paying the residential refuse fee by choosing not to use the municipal service.

The City asserts that there is a mandatory charge for refuse collection and disposal regardless of actual use, and that the compulsory nature of the charge is a reasonable and valid exercise of the City's police power.

■ The appellants argue that because their refuse collection and disposal is not performed by the City of Princeton and they do not use the service for which they are billed, the Ordinance is unreasonable as it applies to them. The appellants fail to recognize that the municipal charge is not just for collecting and disposing of refuse from their places of residence. The sum of all charges are marshalled and designed to defray the expense of a systemic refuse disposal scheme within the City of Princeton. In other words, the purpose of the Ordinance is to protect the health, safety and welfare of the entire community.

An argument similar to that made by the appellants was addressed in *Craig v. City of Macon*, 543 S.W.2d 772 (Mo.1976) (en banc). In upholding the validity of a mandatory fee regardless of actual use, the court in *Craig* reasoned:

> Nonetheless, appellants contend that because they do not have their garbage removed, they do not use the service for which they are billed, and therefore, the ordinances are unreasonable. Appellants, however, erroneously assume that the only benefit conferred by the statute is the

removal of one's own garbage. The legislative intent and the purpose of the city's ordinances are not primarily to remove waste from the community for the convenience of residents, but rather to protect the public health by regulating the collection and disposal of garbage, and thereby minimizing or eliminating a source of disease. Although the appellants may not have waste to be collected, the regulatory scheme protects the entire public, not just those who have waste for disposal, by responsibly removing a source of disease from the community.

*Id.* at 774–75.

The appellants attempt to emphasize that a service fee cannot be imposed against a non-user.[5] The fallacy in this reasoning is that the appellants are users of the municipal service, in a real sense, regardless of how they choose to dispose of refuse because they receive the benefit from the general disposal system. All residents, regardless of how they personally choose to dispose of their refuse, receive a benefit in the collection and disposal of refuse from other premises in the community. The City of Princeton enacted the Ordinance under the plenary power and authority of W.Va.Code 8–13–13 (1971) and charges all residents the service fee because residents are the primary users of the refuse collection and disposal service.[6]

■ An ordinance which provides for a fee assessment to users of a special service must reasonably classify the users, and the services for such a charge must be in conformity with state laws. *City of Moundsville v. Steele*, 152 W.Va. 465, 164 S.E.2d 430 (1968). We hold that a municipality acts reasonably in the exercise of its plenary power and authority under W.Va.Code 8–13–13 (1971), when it enacts an ordinance imposing a residential refuse collection and disposal

---

**5.** Appellants argue that *McCoy v. City of Sistersville*, 120 W.Va. 471, 199 S.E. 260 (1938), is sufficient authority that only actual users must pay for a municipal service. Appellants' reliance on *McCoy* is misplaced because the applicable statute in *McCoy*, W.Va.Code 8–4–20 (1933), predated the enabling statute in the case *sub judice*, W.Va.Code 8–13–13 (1971). The 1933 statute did not grant municipalities plenary power and authority in regard to special or essential ser-

vices. W.Va.Code 8–4–20 (1933). The "plenary power and authority" language was adopted subsequent to this Court's decision in *McCoy*. *Ellison v. City of Parkersburg*, 168 W.Va. 468, 284 S.E.2d 903 n. 1 (1981).

**6.** Specifically, Princeton, W.Va., Ordinance art. 1131.06 (1993), requires residents to pay a fee of $8.50 for the collection and disposal of residential refuse.

fee which by implication classifies residents as users.

Other jurisdictions have similarly concluded that a municipality is justified in collecting a service fee for refuse collection and disposal regardless of whether a resident actually uses the municipal service. *City of Portsmouth v. McGraw,* 21 Ohio St.3d 117, 488 N.E.2d 472 (1986); *Craig v. City of Macon,* 543 S.W.2d 772 (Mo.1976) (en banc); *City of Glendale v. Trondsen,* 48 Cal.2d 93, 308 P.2d 1, 5–6 (1957) (en banc); *Cassidy v. City of Bowling Green,* 368 S.W.2d 318, 319–20 (Ky. 1963); *City of Hobbs v. Chesport, Ltd.,* 76 N.M. 609, 417 P.2d 210, 214 (1966); *Owens v. City of Beresford,* 87 S.D. 8, 201 N.W.2d 890, 891, 894 (S.D.1972).

■ The City of Princeton has enacted an ordinance which is designed to address a public health problem, and the solution to the problem for the benefit of all citizens of Princeton binds the entire community to subsidize a uniform and efficient system of refuse collection and disposal. We conclude that an Ordinance imposing a mandatory service fee on the collection and removal of residential refuse regardless of actual use, in order to prevent a health menace from imperiling an entire community, is a reasonable and valid exercise of the police powers granted to the City of Princeton under W.Va.Code 8–13–13 (1971).

## EXCLUSIVE REFUSE COLLECTION BY THE CITY OF PRINCETON

■ We begin this analysis by building on the premise that a challenge to a municipality's exclusive right of the collection and disposal of refuse have generally been unsuccessful· because exclusivity is a proper exercise of a municipality's police power. *See City of Hobbs v. Chesport, Ltd.,* 76 N.M.

609, 417 P.2d 210 (1966); Annotation, *Regulation and Licensing of Private Garbage or Rubbish Removal Services,* 83 A.L.R.2d 799, 819 (1962 & Later Case Service 1991).

■ If the plain language of the Ordinance did vest the City of Princeton with the exclusive power to collect and dispose of residential refuse, absent any other challenge, we would be likely to uphold that exclusivity. However, we need not be concerned about upholding the City of Princeton's exclusivity in residential refuse collection, since the plain language of the Ordinance only gives the City a limited exclusivity. "The rules for construing statutes also apply to the interpretation of municipal ordinances." Syllabus Point 1, in part, *Town of Burnsville v. Kwik–Pik, Inc.,* 185 W.Va. 696, 408 S.E.2d 646 (1991). "[W]hen the language of a statute is clear and unambiguous, the courts will apply, not construe such language." *Rite Aid v. City of Charleston,* 189 W.Va. 707, 709, 434 S.E.2d 379, 381 (1993).

■ The Ordinance makes a valiant effort to assure that the City of Princeton has exclusivity in Article 1131.04(a) which provides that "[e]xcept as provided otherwise in this article, all refuse accumulated in the City shall be collected, conveyed and disposed of by the City; and no other person shall collect, convey over any of the streets or alleys of the City, or dispose of, any refuse accumulated in the City." Princeton, W.Va., Ordinance art. 1131.04 (1993). It is, however, within the phrase "except as provided otherwise in this article" that exclusivity is lost.

Article 1131.04(b) [7] provides the first exception to the City's exclusivity when it permits actual producers of rubbish to personally collect, remove and dispose of their own rubbish.[8]

---

**7.** Article 1131.04(b) provides:

This article shall not prohibit the actual producers of rubbish, or the owners of premises upon which rubbish has accumulated, from personally collecting, conveying and disposing of such rubbish; provided, that such producers or owners comply with the provisions of this article, and that the manner of collection, conveyance and disposal meet with any other governing law or ordinance and the approval of

the Administrator of Public Works and the County Health Officer.
Princeton, W.Va., Ordinance art. 1131.04(b) (1993).

**8.** The City contends that Article 1131.04(b) relates only to rubbish as distinguished from refuse, which are defined in Article 1131.01(d) and 1131.01(e) of the Ordinance. While there is a distinction between refuse and rubbish, we need not proceed with any analysis of this difference

Another exception to the City's exclusive right to collect and dispose of refuse is contained in Article 1131.08 which provides, *inter alia:*

> (a) *Permit Required.* The collection, removal and disposal of refuse, inclusive of garbage, from buildings, yards and lots within the City shall be made only by collectors who have applied for and received a permit for such activities from the City Clerk.
>
> (b) *Permit Fee.* For each permit granted for the collection of refuse, inclusive of garbage, the City Clerk shall assess such fee as may be established by resolution of Council, which shall be paid to the City Clerk.
>
> (c) *Equipment.* Persons granted permission to collect refuse, inclusive of garbage, in the City shall be equipped with a sanitary vehicle, approved by the City Manager.

Princeton, W.Va., Ordinance art. 1131.08 (1993). This provision requires a private refuse collector to obtain a city permit and to use a sanitary vehicle approved by the City Manager.[9]

A final exception to exclusivity is found in Article 1131.08(d) which provides:

> (d) *Exceptions.* The provisions of this section shall not apply to any person who, upon his own premises, shall lawfully consume by burning, burial, or other manner not in conflict with sanitary regulations as provided by law, any garbage, rubbish, refuse, offal, ashes, glass, cans, or other waste materials, including both vegetable and animal matter, which may accumulate upon his own premises in the ordinary conduct of his household or business.[10]

*Id.* at Article 1131.08(d).[11]

The plain language of the Ordinance permits alternative methods for the collection and disposal of residential refuse to the extent that the Ordinance of the City of Princeton is not the exclusive agency for the collection and disposal of residential refuse within the City. Accordingly, we conclude that the City of Princeton is not the exclusive agency for the collection and disposal of residential refuse within the plain language of Article 1131 of the Princeton City Code. However, within the boundaries of the record before us, there is nothing that would support the appellants' position that they satisfied any or all of the conditions authorizing alternative private methods of refuse collection and disposal.

■ Regardless, so that there is no misunderstanding as to the effect of this decision, even when a resident satisfies all of the prerequisites established within the Ordinance that would permit the private collection and disposal of refuse, the use of this alternative method of collection and disposal does not excuse the non-payment of the refuse service fee.

## CONCLUSION

The decision of the Circuit Court of Mercer County is affirmed as it requires the

---

since this record is silent as to whether Mr. and Mrs. Conley, who chose to self-dispose, complied with the many conditions of this provision including "meet[ing] with any other governing law or ordinance and the approval of the Administrator of Public Works and the County Health Officer." Article 1131.04(b). Some examples of the other governing laws or ordinances which would impact upon the collection, conveyance and disposal of rubbish would include the Water Pollution Control Act, W.Va.Code 22–11–1 to –28 (1994); Solid Waste Management Act, W.Va. Code 22–15–1 to –20 (1994); Hazardous Waste Management Act, W.Va.Code 22–18–1 to –25 (1994); and West Virginia Litter Control Program, W.Va.Code 20–7–24 to –29 (1995).

9. There is reference is this record that Ms. Stamper used a commercial carrier which had proper certification from the Public Service Commission of West Virginia. This record, however, does not contain any information as to whether or not that commercial carrier obtained a permit or used equipment which was specifically approved by the City Manager.

10. There is no contention in this case that the appellants chose to dispose of any garbage, rubbish or refuse within the exception contained in Article 1131.08(d).

11. While there are no other exceptions to the City's exclusive right to collect and remove residential refuse, Article 1131.06(e) empowers outside collectors to collect and dispose of refuse from commercial as distinguished from residential customers. Because there are no commercial customers involved in the case *sub judice,* we need not comment further on this exception.

appellants to pay the monthly refuse service fee to the City of Princeton, even though they choose to dispose of their refuse by private means. Further, the decision of the circuit court is affirmed to the extent that it permits residents to dispose of refuse by private means, providing that there is conformity with all of the conditions described in Article 1131.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.