496 S.E.2d 170

Bobby BAILEY, Administrator of the
Estate of James Michael Bailey,
Plaintiff Below, Appellant,

v.

KENTUCKY NATIONAL INSURANCE
COMPANY, Defendant Below,
Appellee.

No. 24013.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1997.

Filed Oct. 3, 1997.

Michael W. Carey, Pamela C. Deem, Carey, Hill & Scott, Charleston, for the Appellant.

Amy M. Herrenkohl, Herrenkohl & Saxe, Barboursville, for the Appellee.

DAVIS, Justice:

The plaintiff below and appellant herein, Bobby Bailey, as administrator of the estate of James Michael Bailey [hereinafter Michael Bailey or decedent], appeals from an order of summary judgment entered by the Circuit Court of McDowell County on July 31, 1996. The circuit court, ruling in favor of the defendant below and appellee herein, Kentucky National Insurance Company [hereinafter Kentucky National], held that Kentucky National had effectively canceled the policy of insurance it had issued to the plaintiff's decedent and that the decedent had received notice of this cancellation. Upon a review of the record, the parties' arguments, and the pertinent authorities, we reverse the decision of the Circuit Court of McDowell County and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties generally do not dispute the facts underlying this appeal. It appears from the record that Michael Bailey was classified as a high-risk motorist and was unable to procure automobile insurance through the voluntary insurance market. Consequently, he sought assigned risk automobile insurance through the West Virginia Automobile Insurance Plan [hereinafter WVAIP][1] and purchased a policy of insur-

---

1. Recognizing the difficulty that motorists classified as high-risk drivers experienced in attempting to obtain automobile insurance, the West Virginia Legislature authorized insurance companies to jointly establish rates commensurate with the increased costs of insuring these motorists. *See* W. Va.Code § 33–20–15 (1957) (Repl. Vol.1996). *See also* W. Va.Code § 33–20–1 (1957) (Repl.Vol.1996). The West Virginia Automobile Insurance Plan [WVAIP] arose from this scheme and is comprised of all insurers providing coverage to West Virginia motorists. The purpose of the WVAIP is to ensure that high-risk drivers are able to obtain automobile liability coverage. *See* AIPSO (Automobile Insurance Plan Service Organization), West Virginia Automobile Insurance Plan § 1 (effective Jan. 1, 1991). *See also D & M Logging Co. v. Huffman,* 189 W.Va. 9, 11, 427 S.E.2d 244, 246 (1993), discussed *infra* at Section II.B; Thomas C. Cady & Christy Hardin Smith, *West Virginia's Automo-*

ance from Kentucky Central Insurance Company[2] on May 25, 1993. Bailey's insurance policy, effective from May 25, 1993, to May 25, 1994, had an annual premium of $1,186.00 and included underinsured motorist coverage bodily injury limits of $20,000 per person and $40,000 per accident. In accordance with WVAIP policies,[3] Bailey paid $299.47 to Kentucky National at the time his insurance policy was issued.

On June 29, 1993, Kentucky National sent Bailey a premium notice indicating that the first installment for the remainder of his annual premium would be due on July 29, 1993, in the amount of $183.68. The notice stated, on its face, "THE AMOUNT(S) SHOWN AS A PREMIUM DUE MUST BE PAID BY THE CORRESPONDING DUE DATE(S). THIS WILL BE YOUR ONLY NOTICE[.]" The notice did not directly specify that Bailey's insurance policy could be canceled if he failed to make this payment.

After Bailey failed to tender his installment premium by the due date, Kentucky National mailed him a notice of cancellation dated August 2, 1993, indicating that his automobile policy would be canceled effective August 19, 1993, at 12:01 a.m. The notice further recited, "YOU ARE HEREBY NOTIFIED IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE ABOVE MENTIONED POLICY, THAT SAID POLICY SHALL BE CANCELLED AND ALL INSURANCE THEREUNDER SHALL CEASE AND TERMINATE AT AND FROM THE HOUR AND DATE SHOWN, WITHOUT FURTHER NOTICE DUE TO NONPAYMENT OF PREMIUM." Although the record does not conclusively establish that Bailey received this notice, Kentucky National had obtained a certificate of mailing from the United States Postal Service indicating that the Postal Service had received for mailing on August 2, 1993, a letter from Kentucky National addressed to James Michael Bailey.[4]

Subsequently, on August 25, 1993, Kentucky National issued a check to Bailey for $16.78 designated "premium refund." Bailey received this check and cashed it on September 1, 1993.[5]

Shortly thereafter, on September 16, 1993, Bailey was killed in a McDowell County automobile accident.[6] Bailey's father, Bobby Bailey [hereinafter Bailey or administrator Bailey], was appointed administrator of his son's

---

*bile Insurance Policy Laws: A Practitioner's Guide*, 97 W. Va. L.Rev. 583, 592–93 (1995).

2. In November, 1995, Kentucky Central Insurance Company merged with Kentucky National Insurance Company. The resulting company, Kentucky National Insurance Company [hereinafter Kentucky National], assumed the obligations of Kentucky Central Insurance Company and does not contest its status as a party to this appeal and the underlying action. Accordingly, for ease of discussion, subsequent references to the decedent's insurer will refer to Kentucky National rather than attempting to distinguish between the various pre- and post-merger corporate names.

3. Policies of insurance issued through the WVAIP permit an insured to pay one-fourth of the annual premium at the time the policy is first issued. The remaining three-fourths of the annual premium is divided into five monthly installments, the first of which is due two months after the policy's effective date. *See* AIPSO (Automobile Insurance Plan Service Organization), West Virginia Automobile Insurance Plan § 11.B (effective June 15, 1970).

4. The certificate of mailing does not provide proof that a piece of mail actually has been received by the intended addressee. Rather, the "[c]ertificate of mailing service provides only evidence of mailing." United States Postal Service, Domestic Mail Manual Issue 49, § 914 (Sept. 1, 1995).

5. The parties disagree as to the significance of Bailey's actions in cashing the refund check. Bailey's administrator suggests that Bailey may not have understood the premium refund to have been the result of the cancellation of his automobile insurance. Rather, the administrator represents that Bailey owned and insured several different vehicles during the time that his Kentucky National insurance policy was in effect and that Bailey may have understood the premium refund to be the result of varying insurance rates for the different cars. By contrast, Kentucky National contends that Bailey, by endorsing and cashing the check, acknowledged that he was receiving mail at that address. Therefore, it may be presumed that he also received the notice of cancellation which had been mailed to Bailey at that same address.

6. The parties dispute whether Bailey was one of the drivers involved in this accident or whether he was a passenger in one of the vehicles. Nevertheless, the record suggests that the vehicle in which Bailey was situated was not the same automobile he earlier had insured through his Kentucky National policy.

estate. The estate settled with the insurance companies of the owners of the two cars involved in the accident for the maximum coverage limits under both policies, recovering approximately $70,000. Administrator Bailey then sought underinsured motorist benefits under decedent Bailey's automobile insurance policy with Kentucky National. Denying coverage, Kentucky National claimed that Bailey's policy had been effectively canceled on August 19, 1993.

In response to Kentucky National's denial of coverage, administrator Bailey filed a declaratory judgment action in the Circuit Court of McDowell County on September 13, 1995. The action requested the circuit court to declare that Kentucky National's purported cancellation was void and ineffective because it did not comply with the statutory criteria governing an insurer's cancellation of coverage as set forth in W. Va.Code § 33–6A–1(e)(7) (1982) (Repl.Vol.1992).[7] Following cross-motions for summary judgment, the circuit court, by order entered July 31, 1996, determined that the statutory notice provisions governing cancellation of insurance policies by insurers contained in W. Va.Code § 33–6A–1 "appl[y] to insurance obtained through the voluntary market, and [they] do[ ] not apply to policies issued pursuant to the WVAIP." Rather,

[t]he West Virginia statute which governs assigned casualty insurance risks and the WVAIP is W. Va.Code § 33–20–15. Assigned risk insurance policies issued under the auspices of the WVAIP are separate and distinct from policies of insurance issued in the voluntary market, and therefore, W. Va.Code § 33–6A–1(e)(7) does not control the Notice of Cancellation at issue in this action.

Accordingly, the circuit court noted that:

Pursuant to § 18 of the WVAIP, an insurance company has the right to cancel an insurance policy for non-payment of premium by giving the insured ten days [sic] notice[.] [8]

The Notice of Cancellation provided by defendant gave Bailey seventeen days [sic] notice.

The Notice of Cancellation was forwarded to Bailey at Box 133, Panther, West Virginia[.]

As of August 19, 1993, Bailey had failed to pay the first installment.

Due to Bailey's failure to meet his contractual obligations, Bailey's policy of insurance with defendant was canceled effective as of August 19, 1993. As a result of Bailey's breach of contract, a refund check was issued to Bailey on August 25, 1993.

---

7. W. Va.Code § 33–6A–1(e)(7) (1982) (Repl.Vol. 1992) provides, in pertinent part:

No insurer once having issued or delivered a policy providing automobile liability insurance in this State insuring a private passenger automobile shall, after the policy has been in effect for sixty days, or in case of renewal effective immediately, issue or cause to issue a notice of cancellation during the term of the policy except for one or more of the following specified reasons:

(e).... (7).... Notwithstanding any of the provisions of this section to the contrary, no insurance company may cancel a policy of automobile liability insurance without first giving the insured thirty days' notice of its intention to cancel: Provided, That cancellation of the insurance policy by the insurance carrier for failure of consideration to be paid by the insured upon initial issuance of the insurance policy is effective upon the expiration of ten days' notice of cancellation to the insured. *See also* W. Va.Code § 33–1–17 (1957) (Repl.Vol. 1996) ("Premium is the consideration for insurance, by whatever name called.").

8. Section 18 of the WVAIP regarding cancellations states, in part:

B. Cancellation by Company

A company which has issued a policy or binder under this Plan shall have the right to cancel the insurance by giving notice as required in the policy or binder if the insured:

5. has failed to pay any premiums due under the policy[.]

A statement of facts in support of each such cancellation shall be furnished to the producer of record and to the insured, thirty days prior to the effective date of cancellation, *except, however, in the case of non-payment of premium, notice of cancellation shall be furnished to the insured with a copy to the producer and the Plan 10 days prior to the effective date of cancellation.*
AIPSO (Automobile Insurance Plan Service Organization), West Virginia Automobile Insurance Plan § 18 (effective June 15, 1970 and Jan. 1, 1991) (emphasis added).

Bailey cashed said check on or about September 1, 1993[.]

(Paragraph numbering and exhibit references omitted).

In the alternative, the circuit court concluded that even if the notice requirements of W. Va.Code § 33–6A–1 applied to the WVAIP insurance policy,

the cancellation notice provided by defendant was in compliance with the statute.

W.Va.Code § 33–6A–1(e)(7) states in part: "That Cancellation of the insurance policy by the insurance carrier for failure of consideration to be paid by the insured upon initial issuance of the insurance policy is effective upon the expiration of ten days' notice of cancellation to the insured." W. Va.Code § 33–6A–1(e)(7), in part. W. Va.Code § 33–1–17 establishes that the premium is the consideration for insurance by whatever name called. *Id.*

Insurance policies are categorized basically in two ways. There is the initial policy and the renewed policy. The initial policy is the policy in effect for the initial premium. If the policy is renewed for a second term, the policy is a renewal. See generally, [sic] Chapter 33 of the West Virginia Code.

In the case at bar, the policy at issue was an initial policy. The cancellation of Bailey's policy with defendant was effective upon seventeen days [sic] notice, and therefore, not only in compliance with the WVAIP, but in excess of the requirements outlined in W. Va.Code § 33–6A–1(e)(7).

(Paragraph numbering omitted). Thus, the circuit court held that:

defendant, Kentucky National Insurance Company, effectively canceled the policy of insurance at issue in this action and that Bailey had received notice of the same. Therefore, as of September 16, 1993, Bailey did not hold a policy of insurance with the defendant.

Wherefore for those reasons previously detailed, it is hereby ORDERED, ADJUDGED and DECREED that the defendant [sic], Kentucky National Insurance Company's, Motion for Summary Judgment is granted, and all issues as alleged

in the Complaint are hereby dismissed with prejudice. It is further ORDERED, ADJUDGED and DECREED that the plaintiff's Motion for Summary Judgment is denied.

It is from this order of the circuit court, effectively denying underinsured motorist coverage under the decedent's automobile insurance policy, that administrator Bailey appeals to this Court.

## II.

### DISCUSSION

On appeal to this Court, administrator Bailey contends that the circuit court erroneously determined that the cancellation provisions contained in W. Va.Code § 33–6A–1 (1982) (Repl.Vol.1992) do not govern automobile insurance policies issued through the WVAIP. Bailey also contests the lower court's findings that Kentucky National effectively canceled the decedent's insurance policy upon less than thirty days' notice. Finally, Bailey maintains that the circuit court improperly found that the decedent received the cancellation notice mailed by Kentucky National. Following a brief discussion of the applicable standard of review, we will address the issues presented for decision.

### A. Standard of Review

Ordinarily, we review *de novo* a circuit court order granting summary judgment. *See, e.g., Kronjaeger v. Buckeye Union Ins. Co.,* 200 W.Va. 570, 576, 490 S.E.2d 657, 663 (1997); Syl. pt. 1, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995); Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). An award of summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). In other words, " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' " Syl. Pt. 2, in part, *Greenfield v. Schmidt Baking Co., Inc.,* 199 W. Va. 447, 485 S.E.2d 391 (1997) (quoting Syl. pt. 1, *Williams v. Preci-*

*sion Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995) (citations omitted)) (additional citations omitted). However, " '[s]ummary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." ' *Williams v. Precision Coil, Inc.*, 194 W.Va. [at] 59, 459 S.E.2d [at] 336[ ][ (]*quoting Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951)[) ]." *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 710–11, 487 S.E.2d 901, 905–06 (1997). Having set forth the appropriate standard of review, we turn now to the resolution of the issues raised by the parties.

*B.   Time within which Insurer must provide Insured with Notice of Cancellation of Assigned Risk Automobile Insurance Policy*

The parties' main source of contention concerns the notice requirements applicable to Kentucky National's cancellation of the automobile insurance policy issued to the decedent. Bailey, in his capacity as administrator of the decedent's estate, argues that the notice provisions contained in W. Va.Code § 33–6A–1(e)(7) govern this policy termination. In this manner, Bailey suggests that the statutory requirement of ten days' notice, applicable when cancellation is based upon the nonpayment of premiums [9] upon the initial issuance of an insurance policy, does not apply to the instant appeal because once the decedent made the initial 25% premium payment at the time he purchased the policy, his continuing obligation to make installment payments of the remainder of the premium created a continuation policy. Accordingly, Bailey proposes that the statutory requirement of thirty days' notice prior to cancellation governs this scenario and that Kentucky National's attempt to cancel the decedent's policy upon only seventeen days' notice was void and ineffective, thereby resulting in con-

tinuing automobile insurance coverage at the time of the September 16, 1993, accident.

By contrast, Kentucky National urges this Court to uphold the circuit court's decision finding that W. Va.Code § 33–6A–1(e)(7) does not apply to insurance policies issued through the WVAIP. Rather, the WVAIP, itself, contains guidelines as to the proper procedure for terminating an insurance policy, including permitting an insurer to cancel a policy for nonpayment of premiums upon ten days' notice. Thus, Kentucky National claims that the circuit court correctly found that the policy was canceled upon adequate notice to the decedent and that he held no valid policy of insurance with Kentucky National at the time of his death.

■ We begin our decision of this matter with a brief overview of the establishment and purpose of the WVAIP. As noted above, the West Virginia Legislature, recognizing the difficulty that individuals classified as high-risk drivers had in obtaining automobile insurance, enacted W. Va.Code § 33–20–15 (1957) (Repl.Vol.1996) [10] to authorize insurers providing motor vehicle coverage in this State to jointly assume the increased risk associated with insuring these drivers. From this legislation arose the West Virginia Automobile Insurance Plan [hereinafter WVAIP] to accommodate the automobile insurance needs of high-risk motorists. Essentially, the

> WVAIP is an assigned risk pool in which all companies which write automobile insurance in West Virginia are required to participate. The purpose of the plan is to protect the victims of automobile accidents in West Virginia by making insurance available to all cars on the road, even bad risks.

*D & M Logging Co. v. Huffman*, 189 W.Va. 9, 11, 427 S.E.2d 244, 246 (1993).

---

9.  *See* W. Va.Code § 33–1–17 (1957) (Repl.Vol. 1996) (defining "premium" as "the consideration for insurance").

10.  W. Va.Code § 33–20–15 (1957) (Repl.Vol. 1996) provides, in pertinent part:
   With respect to casualty insurance to which this article applies, agreements may be made among insurers with respect to the equitable apportionment among them of insurance which may be afforded applicants who are in good faith entitled to but who are unable to procure such insurance through ordinary methods[.]

The specific role of the WVAIP in the instant appeal is as follows. Apparently, the decedent had been classified as a high-risk driver and was unable to obtain automobile insurance through the voluntary insurance market. Consequently, he sought and purchased automobile insurance from the WVAIP through a local insurance agent in his community. Kentucky National, assigned as the decedent's insurer by the WVAIP, in turn, provided the actual automobile policy coverage through the local agent. Thus, the resulting motor vehicle insurance resembles a type of hybrid policy in that it is governed not only by general West Virginia insurance statutes and the basic policy provisions, but also by the specific terms associated with WVAIP policies.

Turning now to the parties' contentions, we first are requested to determine the time within which an insurer must provide an insured with notice of cancellation of an assigned risk automobile insurance policy. Administrator Bailey proposes that the resolution of this matter turns solely upon a review of W. Va.Code § 33–6A–1(e)(7) (1982) (Repl. Vol.1992).[11] Both Kentucky National and the circuit court concede that § 33–6A–1(e)(7) could resolve this quandary, but they conclude that the WVAIP, rather than the West Virginia Code, governs the terms of assigned risk automobile insurance policies.[12]

■ Initially, we recognize that automobile insurance policies issued pursuant to the WVAIP are, in fact, governed by the West Virginia Code. W. Va.Code § 33–6–1 (1991) (Repl.Vol.1996), the introductory section to the article concerning insurance policies, states "[t]his article shall not apply to reinsurance." Impliedly, then, all policies of motor vehicle insurance in this State, with the exception of "reinsurance," are subject to the statutory provisions pertaining to insurance policies generally, because " 'the exclusion of one subject or thing in a statute is the inclusion of all others.' " *City of Huntington v. Bacon*, 196 W.Va. 457, 471, 473 S.E.2d 743, 757 (1996) (quoting *Johnson v. Continental Casualty Co.*, 157 W.Va. 572, 578, 201 S.E.2d 292, 296 (1973) (citations omitted)). However, we need not resort to mere implication to determine whether assigned risk policies are governed by the general insurance statutes because such policies, also referred to as "substandard risk motor vehicle insurance policies," are among the types of enumerated policies specifically discussed in this article. *See* W. Va.Code § 33–6–31c (1993) (Supp. 1994) (pertaining to "substandard risk motor vehicle insurance policies").

---

11. W. Va.Code § 33–6A–1(e)(7) (1982) (Repl.Vol. 1992) provides, in pertinent part:

No insurer once having issued or delivered a policy providing automobile liability insurance in this State insuring a private passenger automobile shall, after the policy has been in effect for sixty days, or in case of renewal effective immediately, issue or cause to issue a notice of cancellation during the term of the policy except for one or more of the following specified reasons:

(e).... (7).... Notwithstanding any of the provisions of this section to the contrary, no insurance company may cancel a policy of automobile liability insurance without first giving the insured thirty days' notice of its intention to cancel: Provided, That cancellation of the insurance policy by the insurance carrier for failure of consideration to be paid by the insured upon initial issuance of the insurance policy is effective upon the expiration of ten days' notice of cancellation to the insured.

12. Specifically, Kentucky National and the circuit court rely upon Section 18 of the WVAIP.

Section 18 of the WVAIP, which discusses cancellation of policies, states, in part:

B.   Cancellation by Company
A company which has issued a policy or binder under this Plan shall have the right to cancel the insurance by giving notice as required in the policy or binder if the insured:

5.   has failed to pay any premiums due under the policy[.]

A statement of facts in support of each such cancellation shall be furnished to the producer of record and to the insured, thirty days prior to the effective date of cancellation, *except, however, in the case of non-payment of premium, notice of cancellation shall be furnished to the insured with a copy to the producer and the Plan 10 days prior to the effective date of cancellation.*
AIPSO (Automobile Insurance Plan Service Organization), West Virginia Automobile Insurance Plan § 18 (effective June 15, 1970 and Jan. 1, 1991) (emphasis added).

■ Furthermore, we note the Legislature's failure to specifically exclude assigned risk automobile insurance policies from treatment in the code's next article pertaining solely to the "cancellation or nonrenewal of automobile liability policies." W. Va.Code § 33–6A–1 specifies permissible reasons for the cancellation of policies of "automobile liability insurance." In this regard, we are mindful that "where the general language of a statute is broad enough to include a particular subject matter, an intent to exclude it from the operation of the law must be definitely expressed." 73 Am.Jur.2d *Statutes* § 148 (1974) (footnote omitted). *See also Choteau v. Burnet,* 283 U.S. 691, 696, 51 S.Ct. 598, 601, 75 L.Ed. 1353, 1357 (1931) ("The intent to exclude must be definitely expressed, where ... the general language of the [a]ct ... is broad enough to include the subject matter." (citations omitted)). Thus, the blanket inclusion of automobile liability policies generally, by necessity, includes all, more specific types of motor vehicle coverage, including assigned risk automobile liability policies, while excluding all insurance not relating to motor vehicles. This inclusion of assigned risk automobile policies is particularly appropriate as the Legislature has not definitely excluded them from the broad category of "automobile liability policies." Were this inclusion not inferred, countless assigned risk automobile insurance policies, and their individual policy holders, could conceivably escape the broad protections afforded by the West Virginia Legislature's regulation of the insurance industry. Accordingly, we hold that an insurer wishing to cancel an assigned risk automobile insurance policy, also referred to as a substandard risk motor vehicle insurance policy, is subject to the provisions governing such cancellations contained in W. Va.Code § 33–6A–1 (1982) (Repl.Vol.1992).

■ Next, we must determine the specific time periods within which an insurer must notify an insured of a forthcoming cancellation of assigned risk automobile insurance. Both the parties and the circuit court suggest that the appropriate statute in this regard is W. Va.Code § 33–6A–1(e)(7). This provision effectively states that an insurer may not cancel a policy of insurance that has been in effect for sixty days, for one of the enumerated reasons, unless it first provides the insured with thirty days' notice. An exception to the thirty days' requirement exists where an insured fails to pay consideration "upon initial issuance of the insurance policy"; in this scenario, an insurer must only provide the insured with ten days' notice of its intention to cancel.

Despite having reviewed the parties' arguments surrounding this statute, we believe their reliance on this section is misplaced. Administrator Bailey attempts to construe the decedent's continuing obligation to pay his annual premium in installments as transforming the resulting policy into a continuation policy, thereby requiring thirty days' notice of cancellation. This construction leads to inapposite results depending upon whether the insured is able to afford paying his/her annual premium in one lump sum or whether his/her financial circumstances make several installment payments more feasible. The approach urged by Bailey also fails to indicate which enumerated reason for cancellation would permit the attempted cancellation in this case. By contrast, Kentucky National blurs the distinction between an initial insurance policy and the "initial issuance" of a policy to support its contention that only ten days' notice was required for its purported cancellation for nonpayment of premiums due.

Rather, we believe the better, and more direct, course to a resolution of this case lies in the overlooked language of W. Va.Code § 33–6A–1(a) (1982) (Repl.Vol.1992). Section 33–6A–1 begins by directing that:

> [n]o insurer once having issued or delivered a policy providing automobile liability insurance in this State insuring a private passenger automobile shall, after the policy has been in effect for sixty days, or in case of renewal effective immediately, issue or cause to issue a notice of cancellation during the term of the policy except for one or more of the following specified reasons[.]

Among the specified reasons, subsection (a) permits cancellation if "[t]he named insured fails to discharge when due any of his obligations in connection with the payment of

premium for such policy *or any installment thereof* [.]" (Emphasis added). Pertaining to all of the permissible reasons for cancellation of automobile insurance policies having been in effect for sixty days is the following directive contained in subsection (e)(7): "Notwithstanding any of the provisions of this section to the contrary, no insurance company may cancel a policy of automobile liability insurance without first giving the insured thirty days' notice of its intention to cancel[.]" Because W. Va.Code § 33–6A–1(a) speaks directly to the situation presently before us, cancellation upon an insured's failure to pay his/her premium, our resolution of this appeal on this basis will avoid the strained and awkward statutory constructions suggested by the parties.

■ We have repeatedly stated that " 'when the language of a statute is clear and unambiguous, the courts will apply, not construe such language.' " *City of Princeton v. Stamper*, 195 W.Va. 685, 689, 466 S.E.2d 536, 540 (1995) (quoting *Rite Aid of West Virginia, Inc. v. City of Charleston*, 189 W.Va. 707, 709, 434 S.E.2d 379, 381 (1993) (citation omitted)). *See also* Syl. pt. 4, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997); Syl. pt. 1, *Kucera v. City of Wheeling*, 153 W.Va. 531, 170 S.E.2d 217 (1969). Because the language of W. Va.Code § 33–6A–1(a) is clear and unambiguous, we need only apply its directives to the facts presented by the instant appeal.

■ In this case, Kentucky National issued the assigned risk automobile insurance policy at issue to the decedent on May 25, 1993, and the policy went into effect upon its issuance. After the policy had been in effect for more than sixty days, Kentucky National, by letter dated August 2, 1993, notified the decedent that it intended to cancel his policy of insurance "DUE TO NONPAYMENT OF PREMIUM," with the cancellation to be effective on August 19, 1993. Although the stated reason for cancellation was proper, Kentucky National's purported cancellation was not valid because it failed to provide the decedent with the requisite thirty days' notice. With respect to a similar situation we have recognized that "[w]here there has been an invalid cancellation, the automobile liability insurance policy remains in effect until the end of its term or until a valid cancellation notice is perfected, whichever event first occurs." *Conn v. Motorist Mut. Ins. Co.*, 190 W.Va. 553, 558, 439 S.E.2d 418, 423 (1993) (citation omitted). Since Kentucky National failed to perfect a valid notice of cancellation, its purported cancellation was void, and the decedent's automobile insurance policy remained in effect at the time of his fatal accident on September 16, 1993. Accordingly, we reverse the decision of the Circuit Court of McDowell County finding that the decedent did not have motor vehicle coverage with Kentucky National on September 16, 1993, and remand this matter for further proceedings consistent with this opinion.[13]

■ In answer to the contentions of Kentucky National that Section 18 of the WVAIP governs the outcome of this case, we reply, as we have before, that "insurance contracts cannot alter statutory provisions." *Deel v. Sweeney*, 181 W.Va. 460, 462, 383 S.E.2d 92, 94 (1989) (citing *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 627, 207 S.E.2d 147, 150 (1974)). Stated otherwise, "[p]rovisions in an insurance policy which conflict with the requirements of a general insurance statute either by adding to or taking from its requirements are void and ineffective." Syl. pt. 2, *Johnson v. Continental Casualty Co.*, 157 W.Va. 572, 201 S.E.2d 292. *See also Johnson*, 157 W.Va. at 581, 201 S.E.2d at 297 (" '[T]he controlling instrument is the statute and th[e] provisions in the

---

**13.** At this juncture we wish to note that our resolution of this appeal in the above-described manner does not mean that we in any way condone the decedent's actions in reneging upon his contractual obligations and failing to pay his automobile insurance premiums. On the contrary, we emphasize that, generally, insurance companies have the statutory authority, pursuant to W. Va.Code § 33–6A–1(a) and § 33–6A–1(e)(7), to cancel a policy of automobile insurance for nonpayment of premiums precisely because "[t]he premium is the price of the insurance and payment of the premium is of the essence of the insurance contract." Syl. pt. 2, in part, *Nationwide Mut. Ins. Co. v. Smith*, 153 W.Va. 817, 172 S.E.2d 708 (1970). Nevertheless, given the application of the statutory law in effect at the time of the events underlying this appeal, justice demands the result announced.

insurance policy that conflict with the requirements of the statute, either by adding to or taking from its requirements are void and ineffective[.]' " (quoting *Tulley v. State Farm Mut. Auto. Ins. Co.*, 345 F.Supp. 1123, 1128 (S.D.W.Va.1972) (citation omitted))). *Cf.* Syl. pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985) (*"Where provisions in an insurance policy* are plain and unambiguous and where such provisions *are not contrary to a statute,* regulation, or public policy, *the provisions will be applied and not construed."* (citations omitted) (emphasis added)). Hence, the provisions of Section 18 of the WVAIP, which permit an insurer to cancel an assigned risk automobile insurance policy for nonpayment of premiums upon ten days' notice regardless of the length of time the policy has been in effect, must yield to the incompatible statutory provisions of W. Va.Code § 33–6A–1(e)(7), which require an insurer to provide thirty days' notice to an insured before canceling a policy for lack of consideration if the policy has been in effect for sixty days. Therefore, we hold that if a policy of automobile insurance issued pursuant to the WVAIP (West Virginia Automobile Insurance Plan) has been in effect for sixty days or more, the insurer must provide the insured with thirty days' notice before it may cancel the policy for nonpayment of premium, as required by W. Va.Code §§ 33–6A–1(a) and 33–6A–1(e)(7) (1982) (Repl.Vol.1992).

Finally, we note that the parties have raised the issue of whether the decedent received the cancellation notice purportedly mailed by Kentucky National on August 2, 1993. As we have resolved this appeal by determining that the attempted cancellation was void and ineffective, we need not further address this issue.[14]

## III.

## CONCLUSION

For the foregoing reasons, we conclude that the decedent, Michael Bailey, did have

---

14. Though we do not today profess to decide those future cases potentially arising under W. Va.Code § 33–6A–1, we do note that the 1996 amendments to this statute now require an insurer to send a notice of cancellation "by registered

in effect a valid policy of assigned risk automobile liability insurance at the time of his death on September 16, 1993. Accordingly, we reverse the decision of the Circuit Court of McDowell County and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

or certified mail." *See* W. Va.Code § 33–6A–1(e)(7) (1996) (Supp.1997). By contrast, the law applicable to the instant appeal did not specify how such a notice should be sent. *See* W. Va. Code § 33–6A–1(e)(7) (1982) (Repl.Vol.1992).