**TOWNSHIP OF WEST MANCHESTER**

v.

**Howard MAYO, Jr., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1999.
Decided Feb. 17, 2000.

David C. Keiter, York, for appellant.

John C. Herrold, York, for appellee.

Before McGINLEY, J., KELLEY, J., and RODGERS, Senior Judge.

KELLEY, Judge.

Howard Mayo, Jr. appeals from an order of the Court of Common Pleas of York County (trial court) granting the Township of West Manchester's (Township) motion for summary judgment and denying Mayo's cross-motion for summary judgment. We affirm.

Pursuant to the Township's waste collection and disposal ordinance, the collection, transportation and disposal of municipal waste by a contractor is mandatory. Reproduced Record (R.R.) at 34a–35a. The ordinance imposes a quarterly fee for the disposal of municipal waste. *Id.* at 38a. Residents are billed for the collection of municipal waste by Shiloh Water & Sewer Systems. The charge is billed at the same time the residents are charged for water and sewer services.

The Township filed a municipal waste collection claim against Mayo on June 19, 1996 for failure to pay refuse collection charges for the time period April 1, 1995 through March 31, 1996. On September 16, 1996, Mayo filed a rule to show cause and a defense to the municipal claim alleging therein that he did not generate municipal waste nor did he place municipal waste for collection from his premises during the period in question. Therefore, Mayo alleged that he should not have to pay the refuse collection fee. Both sides filed motions for summary judgment.

The trial court granted the Township's motion and denied Mayo's motion. The trial court determined, based on Mayo's deposition, that Mayo does generate refuse even though it may be a relatively small amount. The trial court found further that even if Mayo did not generate any refuse, he would still be obligated to pay the refuse fee. The trial court found that pursuant to the Township's ordinance, the Township has the right to charge the owner of any dwelling unit for the refuse service that it provides. The trial court determined that whether the resident actually uses the refuse service is irrelevant. The trial court rejected Mayo's contentions that the ordinance is unreasonable and unenforceable, that the ordinance is loosely drafted, and that the fee charged is unreasonable since Mayo generates little or no refuse. This appeal followed.[1]

Herein, Mayo raises the issue of whether the municipal lien imposed upon Mayo's property for failure to pay charges for refuse collection and disposal is valid. In support of this issue, Mayo raises several arguments.

First, Mayo contends that the lien imposed is invalid because Mayo did not receive a bill from the Township for refuse

---

1. Our scope of review of a grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. La-Barr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Id.*

collection but instead received the bill from Shiloh Water & Sewer Systems. R.R. at 1a. Mayo argues that there is no agreement or other document whereby the Township has designated Shiloh as its agent to bill for and receive payment for the refuse collection fees imposed by the Township. Thus, Mayo contends that the Township has filed an invalid lien for nonpayment to another agency. We disagree.

■ Under the Second Class Township Code,[2] the Township is authorized to establish, impose and collect reasonable fees and charges for the collection, removal and disposal of ashes, garbage, solid waste, other refuse materials, and recyclable materials upon private property. *See* Sections 2101 and 2105 of The Second Class Township Code, 53 P.S. §§ 67101; 67105. The Township, through its board of supervisors, is also charged with the general governance of the township and the execution of legislative, executive and administrative powers in order to ensure sound fiscal management and to secure the health, safety and welfare of the citizens of the Township. *See* Section 607(1) of The Second Class Township Code, 53 P.S. § 65607(1). In order to carry out these responsibilities, the Township is authorized to employ persons as may be necessary for the general conduct of the business of the Township. *See* Section 607(3) of The Second Class Township Code, 53 P.S. § 65607(3). Accordingly, the Township is authorized to employ an outside agency to collect the quarterly fee imposed upon residents of the Township by the Township's waste collection and disposal ordinance.

■ Second, Mayo contends that The Second Class Township Code does not give the Township authority to file a lien for the collection of refuse and disposal fees even if the Township had directly billed Mayo. Mayo points to the definition of a municipal claim in Section 1 of what is commonly referred to as the Municipal Claims and Tax Liens Act,[3] which provides that a municipal claim is a claim for water rates, lighting rate or sewer rates, and contends that the Act states nothing about a claim for refuse collection or disposal rates. Mayo argues that while the Second Class Township Code provides for solid waste collection and disposal, it does not contain any provision for the filing of a municipal claim if any such fees or rates remain unpaid. Thus, Mayo argues that there is no statutory authority for the claim filed against Mayo by the Township.

The Township argues that this issue has been waived due to Mayo's failure to raise it before the trial court. We agree. Pursuant to Pa.R.A.P. 302 "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Accordingly, we will not address this issue.[4]

Third, Mayo argues that the ordinances regulating waste collection and disposal are so poorly written as to be unenforceable, thereby rendering the lien invalid. Mayo argues that the ordinance is so poorly drafted that men of common intelligence cannot determine whether or not the ordinance is applicable to their conduct. For example, Mayo points out that the ordinance refers to waste generated by a "dwelling unit" and contends that because a dwelling unit is inanimate, it cannot generate waste. Mayo argues that only persons can generate waste but that the ordi-

---

2. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

3. Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7101.

4. We note that Section 1 of the Municipal Claims and Tax Liens Act also states that a municipal claim includes the claim arising out of, or resulting from a service supplied.

53 P.S. § 7101. In addition, Section 4 of the Municipal Claims and Tax Liens Act states that "[t]he lien for ... water rates, lighting rates, or sewer rates, **or rates for any other service furnished by a municipality,**—shall exist in favor of, and the claim therefore may be filed against the property thereby benefited by, the municipality extending the benefit...." 53 P.S. § 7107 (Emphasis added.).

nance does not purport to regulate the activities of persons as it only refers to waste generated by the dwelling unit. Mayo also points out that the ordinance states that the contractor shall collect two containers from each dwelling unit on each collection day whether or not that much waste is generated by the dwelling unit. Therefore, Mayo contends that anyone, including him, who does not place two containers out for collection is in violation of the ordinance. This result, May argues, is obviously absurd. Moreover, Mayo contends, while the ordinance requires the contractor to collect two containers, the ordinance does not specify two containers of what is to be collected.

▮ Pursuant to Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a), every statute shall be construed, if possible, to give effect to all its provisions.[5] Statutes are to be reasonably construed. *Kelly v. Jones*, 419 Pa. 305, 214 A.2d 345 (1965). In ascertaining the intention of the legislative body, which enacted the ordinance or statute, it is presumed that the legislative body did not intend a result that is absurd, impossible of execution or unreasonable. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1).

▮ Herein, Mayo is purposely interpreting the ordinance to produce an unreasonable and absurd result in order to support his claim that the ordinance is so poorly drafted as to be unenforceable. Based on our review of the entire ordinance, we reject Mayo's contention. While the ordinance may refer to waste collected from a "dwelling unit" and not the resident

or residents residing there, it is clear that the intent of the ordinance is to provide for the collection and disposal of waste generated by the residents. Section 100–2 of the ordinance defines dwelling unit as "[o]ne (1) or more rooms in a dwelling, . . . . for occupancy by one (1) person, two (2) or more persons living together or one (1) family." R.R. at 33a.

With respect to Mayo's contention that the ordinance requires the contractor to collect two containers, Section 100–7 of the ordinance only governs the quantity of refuse to be collected.[6] The ordinance clearly does not mandate that each resident place two containers out for collection or be in violation of the ordinance. As to Mayo's claim that the ordinance does not specify what is to be placed in the containers, we reject this contention as completely without merit. The whole ordinance deals with refuse collection and Mayo should be able to ascertain with minimal assistance what materials the containers put out for collection should contain. Accordingly, we reject Mayo's argument, based on his own tortured interpretation, that the ordinance is so poorly drafted that men of common intelligence cannot determine whether or not it is applicable to their conduct.

Finally, Mayo argues that it is unreasonable to impose the same charge on a resident that does not need or use the refuse collection and disposal services provided by the Township as are imposed on others who do need and use the service; thus, the lien is invalid. Mayo argues that the case relied upon by the Township for the opposite proposition, *Borough of Coopersburg v. Cliff,* 16 Pa. D. & C.2d 576 (Lehigh

---

5. We note that the rules of statutory construction are applicable to statutes and ordinances alike. *Borough of Fleetwood v. Zoning Hearing Board of the Borough of Fleetwood,* 538 Pa. 536, 649 A.2d 651 (1994); *Diehl v. City of McKeesport,* 60 Pa.Cmwlth. 561, 432 A.2d 288 (1981).

6. Section 100–7, entitled Quantity of refuse to be collected; failure of owner to comply, provides as follows:

The contractor shall collect two (2) containers, plastic bags or bundles of the authorized size and weight on each collection day. Where the contractor has not made a collection by reason of the failure of the owner of a dwelling unit, commercial establishment or institutional establishment to comply with the collection ordinance or regulations, the contractor shall report the matter in writing to the township. R.R. at 36a.

CCP, 1958), is not controlling. Mayo points out that the case is 40 years old 'and argues that in this day and age, it is easier for a resident to minimize the amount of municipal waste generated by him and this should be encouraged, not penalized.

In response, the Township contends that Mayo's own deposition testimony belies the contention that he recycles everything and does not generate any refuse or waste. The Township argues that the testimony of Mayo's son and Mayo's friend also contradict Mayo's testimony that he does not generate any waste or refuse. The Township contends that even if Mayo does not generate any refuse, he is still liable for the fees imposed for refuse collection. In support of this argument, the Township relies upon the Supreme Court of Missouri's decision in *Craig v. City of Macon,* 543 S.W.2d 772 (Mo.1976), which held that a resident is liable to pay the waste collection and disposal fee even though he may not avail himself of the service, and the West Virginia Supreme Court of Appeals' decision in *City of Princeton v. Stamper,* 195 W.Va. 685, 466 S.E.2d 536 (1995), wherein the court rejected the property owners' contention that they should not have to pay the city's refuse collection fee because they either hired a private con- tractor or disposed of the refuse them- selves. The Township also relies upon the Lehigh County Court of Common Pleas decision in *Borough of Coopersburg.*

With respect to Mayo's contention that he does not generate any waste and recy- cles everything, we agree with the ·Town- ship that Mayo's own deposition testimony and the deposition testimony of Mayo's friend and Mayo's son contradict this con- tention. For example, Mayo testified that there are a few things that he cannot recycle. *See* R.R. at 84a. Mayo's son testified, contrary to Mayo's statements, that Mayo has never brought any type of

trash or recyclable material to either the son's business facility or the son's home for disposal. *See* R.R. at 95a–96a. Like- wise, Mayo's friend testified that Mayo brings to her home for disposal items that are placed in her trash cans in addition to items that are placed out for recycling. R.R. at 108a. ·Accordingly, the record shows that Mayo does generate refuse or waste and that he does not recycle every- thing.

■ As pointed out by the Township, the issue of whether a resident, such as Mayo, who does not generate any refuse, is still liable for the fees imposed for re- fuse collection, appears to be one of first impression in Pennsylvania appellate courts. However, with respect to the ar- gument that even if Mayo does not gener- ate any refuse, he is still liable for the fees imposed for refuse collection, we find the decision by the Court of Common Pleas of Lehigh County in *Borough of Coopersburg* instructive.[7] In *Borough of Coopersburg,* the issue was whether the charges im- posed by the borough for garbage removal were valid as against persons who may not desire to have the municipality remove their garbage. In deciding this issue, the court of common pleas stated that:

It can, therefore, be assumed, consid- ering the indestructibility of matter, that every householder will have some gar- bage, as defined by the ordinance, that he is incapable of disposing of without violation of the ordinance, except per- haps if he were to haul it personally outside the borough limits.....

·The borough cannot be expected to police its streets to determine what household units are vacant, whether they have remained vacant or whether they have somehow managed in these days of cans and bottles to have com- pletely consumed all garbage upon the premises or otherwise disposed of it

---

**7.** Contrary to Mayo's contention, the fact that the court's decision in *Borough of Coopers- burg* is over forty years old is of no moment because there are still some items, as admit- ted to by Mayo in his deposition, that are not subject to recycling. Thus, the court's rea- soning therein is still applicable today.

within the narrow permissible limits of the ordinance.....

*Borough of Coopersburg,* 16 D. & C.2d at 579.

We also find instructive the West Virginia Supreme Court of Appeals' reasoning in *City of Princeton.* Therein, the appellants argued that since their refuse collection and disposal was not performed by the city and they did not use the service for which they were billed, the ordinance imposing a fee for the collection and disposal of refuse was unreasonable as it applied to them. In rejecting this argument, the Supreme Court of Appeals stated that:

> The appellants attempt to emphasize that a service fee cannot be made against a non-user. The fallacy in this reasoning is that the appellants are users of the municipal service, in a real sense, regardless of how they choose to dispose of refuse because they receive the benefit from the general disposal system. All residents, regardless of how they personally choose to dispose of their refuse, receive a benefit in the collection and disposal of refuse from other premises in the community.

*City of Princeton,* 466 S.E.2d at 539 (footnote omitted).

Herein, Mayo does not dispute that the Township had the authority pursuant to The Second Class Township Code to enact an ordinance providing for the collection and disposal of refuse within the limits of the township. Mayo also does not dispute that the Township was permitted under The Second Class Township Code to charge a reasonable fee for such collection and disposal. Mayo argues that because he does not generate any refuse, he does not have to pay the fee imposed by the Township through its ordinance for the collection and disposal of refuse.

Based upon the reasoning by the courts in *Borough of Coopersburg* and *City of Princeton,* we reject Mayo's argument and hold that even if a resident does not generate any refuse or waste, the resident is still responsible for any service fee or charge lawfully imposed by a municipality for the collection and disposal of refuse. The fact that the resident may not generate any refuse as that term is defined by ordinance does not excuse the non-payment of a refuse service fee or charge. This applies equally to the situation where the resident chooses to dispose of his or her refuse through other means other than those provided for by ordinance. As pointed out by the court in *City of Princeton,* residents of a municipality are users of the municipality's collection and disposal service regardless of how they choose to dispose of refuse because they receive the benefit from the general disposal system by the collection of refuse from other premises in the community.

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 17th day of February, 2000, the order of the Court of Common Pleas of York County, at 96MT00200, dated May 20, 1999, is affirmed.